[No. 9192.  Department One.  May 10, 1911.]

## H. B. STRAND *et al.*, *Appellants*, v. J. M. GRIFFITH *et al.*, *Respondents.*[1]

CONSTITUTIONAL LAW — IMPAIRING OBLIGATIONS OF CONTRACTS — MORTGAGES—FORECLOSURE — POSSESSION — REMEDIES.  A statute relative to mortgage foreclosure sales is unconstitutional as to existing mortgages as impairing the obligation of the contract, in so far as it requires the sheriff to postpone the sale for one year and gives the mortgagor possession of the premises during that time, when the former law gave the mortgagee the right to an immediate sale with the right of possession during the period of redemption; but the law is valid in changing the requirements as to the notices of sale; since that merely affects the remedy and not the obligation of the contract.

MORTGAGES—FORECLOSURE—SALES—IRREGULARITIES—CONFIRMATION. Failure to publish notice of a mortgage foreclosure sale in the exact manner required by law is an irregularity only, and does not render the sale so far void that it is not curable by the order of confirmation.

MORTGAGES—FORECLOSURE—SALE—ACTION TO SET ASIDE—LACHES. A delay of nine years in bringing suit to cancel a mortgage foreclosure sale, without any excuse, is such laches as to justify the denial of relief on any ground other than the actual invalidity of the sale.

[1]Reported in 115 Pac. 512.

Appeal from a judgment of the superior court for What-
com county, Kellogg, J., entered March 26, 1910, upon sus-
taining a demurrer to the complaint, dismissing an action to.
vacate a foreclosure sale.   Affirmed.

*Blaine, Tucker & Hyland*, for appellants.

*Hadley, Hadley & Abbott* and *Dorr & Hadley*, for re-
spondents.

FULLERTON, J.—On February 15, 1897, the appellants,.
who are husband and wife, executed and delivered to the re-
spondent J. M. Griffith a mortgage upon certain real prop-
erty situated in Whatcom county, to secure the payment.
of the sum of $4,800, with interest, six months from date.
The debt evidenced by the mortgage was not paid at ma-
turity, and proceedings were instituted to foreclose the same
on November 3, 1897.   Summons on the complaint was duly
issued and served, and the cause proceeded regularly to a.
decree of foreclosure, which was entered on February 5,.
1898.   On February 24, 1898, some nineteen days after the
entry of the decree, an execution and order of sale was issued.
thereon, under which the sheriff of the county in which the
land is situated sold the land to the mortgagee, he being the
highest and best bidder therefor at the foreclosure sale.   In
making the sale, the sheriff followed the procedure mapped.
out by the statute relating to foreclosure sales in existence at
the time the mortgage was executed.   That statute provided,
in substance, that a decree of foreclosure should be enforced
by execution directed to the sheriff, that the execution should
contain a description of the mortgaged property, and that
the sheriff should endorse upon it the time when he receives
it, and should thereupon forthwith proceed to sell the mort-
gaged premises, or so much thereof as might be necessary to
satisfy the decree, after giving notice of such sale by posting
a written or printed notice of the time and place of sale,.
particularly describing the property, for four weeks succes-

sively in three public places of the county where the property is to be sold, and by publishing a copy thereof once a week for the same period in a newspaper of the county, if there be one, or if there be none, then in a newspaper published nearest the place of sale.

Due return of the sale was made by the sheriff on March 29, 1898, and the sale was confirmed on April 30, 1898. A sheriff's deed to the purchaser followed in due order. In the meantime, however, that is to say, between the time of the execution of the mortgage and the commencement of the foreclosure proceedings, the legislature made certain radical changes in the law relative to sales of property under decrees of foreclosure and executions on ordinary money judgments. It provided that, on receiving the writ of execution, the sheriff should endorse thereon, or attach thereto, a description of the property to be sold; that he should file with the clerk of the court where the property is situated, and with the clerk of the court issuing the writ, a copy of the writ with such description attached to or endorsed thereon; that one year after the time of filing such levy he should give notice that the property levied upon would be sold at public auction in satisfaction of the judgment, by posting notices of such sale in three public places in the county where the sale is to be made, one of which should be in a conspicuous place on the property to be sold, four weeks prior to date of sale, and by publishing a copy thereof once a week for the same period in the official paper of the county, or if there be none, then in a newspaper published nearest the place of sale. It was provided, moreover, that no sale could be had at all until after the land had been appraised, and that at the sale the land must bring, if capable of division, at least eighty per cent of its appraised value, Other conditions were also provided, not necessary here to notice.

The present action was begun in July, 1907, by the mortgage debtors to set aside the sale made by the sheriff. To a complaint embodying the foregoing facts, the several de-

fendants separately demurred, which demurrer was on a
hearing sustained by the trial court. This appeal is from a
judgment of dismissal and for costs, entered against the
plaintiffs after they had elected to stand on their complaint
and had refused to plead further.

The question presented by the record; namely, which of
these statutes was the sheriff obligated to follow in con-
ducting the sale, ·was before this court as to some of its
features in the case of *Swinburne v. Mills*, 17 Wash. 611, 50
Pac. 489, 61 Am. St. 932. It was there held that the pro-
visions of the later statute to the effect that the sheriff must,
after levying upon the land to be sold, delay the sale for one
year and cause an appraisement of the land before such sale,
were not applicable to a case such as the one now at bar,
where the mortgage was executed prior to the enactment of
the statute, for the reason that it impaired the obligation of
the mortgage contract. Concerning this question the court
said:

"This brings us then to the third proposition, viz.: Is the
act unconstitutional so far as its application to contracts
made prior to the passage of the act is concerned? It will
thus be seen that this case involves the principle of inviola-
bility of contracts. This principle the courts have always
protected, no matter from what quarter, or under what
guise, it has been assailed, whether by a party to the con-
tract, who has sought to vary its terms, or by legislative
enactments in his interests. It is a principle which is founded
upon honesty and good faith, and finds its support in ethics
as well as law, and it was recognized and enforced before it
became a constitutional guarantee. It gives stability to busi-
ness transactions. In fact, it makes them possible. It
gives value to contracts, and without the upholding of this
principle neither civilization nor governments could exist. A
contract is an agreement to do or not to do a particular thing.
The obligation is the binding force of the contract. The
constitution prohibits the passing of laws which impair the
obligation. of a contract. The practical question then is,
What is an impairment of a contract? Webster's defini-
tion of 'impair' is, 'To make worse; to diminish in quantity,

value, excellence or strength; to deteriorate.' Then if the value of a contract is deteriorated or lessened by the passage of an act, the obligation of the contract is most certainly impaired. Then the question arises, Was the contract of this mortgagee deteriorated or made less valuable by the passage of this act? It is a principle of law so often enunciated and so uniformly maintained that the law which is in existence at the time a contract is made becomes a part of the contract, that it would be idle to cite authorities on that proposition, or to further mention it. In this case it is especially stipulated in the mortgage that the laws in force at the time the contract was made should become a part of the contract, but in the absence of such stipulation the effect would be exactly the same. Under the law in existence at the time the contract was made, the mortgagee had a right to the sale of this land at once upon the issuance of his execution, subject only to the redemption provided for by law. This was a valuable right and a right no doubt that was taken into consideration by the judgment creditor, or, in this case, the mortgagee, when the contract was made. The law now compels him to wait more than a year after judgment before he can have the sale made. It seems to us to be beyond controversy that, as to antecedent contracts, this provision of the law is void."

Further on in the opinion the court cited and quoted from a number of cases from the supreme court of the United States, showing that the question was one of Federal cognizance, and that the highest Federal court had announced a similar rule. In the light of these cases, therefore, there can be no question that the sheriff was justified in selling the property under the execution without the delay of a year and without having the land appraised.

But while the courts deny the power of the legislature to make such radical changes in the remedy for enforcing a contract as to impair its obligation, they are agreed that whatever belongs merely to the remedy and does not affect the obligation of the contract can be changed at the pleasure of the legislature. So in this instance it was perfectly proper for the legislature to require on a foreclosure sale that one of

the notices thereof be posted in a public place on the land to be sold, and that copies of such notices be published in the county official paper if there be one, although the law in force at the time the contract was entered into allowed such notices to be posted in three public places in the county generally, regardless of the location of the land, and allowed copies thereof to be published in any paper published in the county where the land was situated, regardless of the question whether such paper was the county official paper or not. In the case at bar it is alleged that no one of the notices of sale was posted on the land, nor was a copy thereof published in the county official paper; and the question is presented whether these omissions avoid the sale. It is our opinion that they do not. While the omissions may have rendered the sale so far irregular as to have warranted the court in refusing to confirm the sale, we do not think they rendered the sale so far void as to be incurable by the order of confirmation. Moreover, this action was begun, as will be noticed from the dates given, more than nine years after the sale took place, and no reason is shown why it could not have been prosecuted at any time during that period. On the ground of laches alone the court would be justified in denying relief on any ground other than the actual invalidity of the sale.

The judgment is affirmed.

Dunbar, C. J., Parker, Mount, and Gose, JJ., concur.