[No. 13946. Department Two.   July 9, 1917.]

## TITLE GUARANTY & SURETY COMPANY, *Appellant*, v. COFFMAN, DOBSON & COMPANY, *et al.*, *Respondents*.[1]

STATES — CONTRACTS — CONTRACTOR'S BONDS — NOTICE OF CLAIM — TIME FOR FILING. Under Rem. & Bal. Code, § 1161, requiring claims against a contractor's statutory bond to be filed within 30 days from the "completion of the contract and acceptance of the work," a claim against a bond for the construction of a state bridge may be filed within thirty days after formal acceptance of the bridge by the highway commissioner, although the work was actually completed and the engineer made the final estimate some months previously, where the engineer derived no authority from the contract or the highway commissioner to accept the construction.

SAME—CONTRACTS—CONTRACTOR'S BOND—NOTICE OF CLAIM—SUFFICIENCY. The notice of a claim against a contractor's statutory bond securing claims for the construction of a state bridge substantially complies with the statute although it does not name the sureties, where the notice mentions the bond and states an intention to hold it liable, and there was no other bond given.

SAME. A notice of claim against a contractor's statutory bond securing claims for the construction of a state bridge is not void on account of including nonlienable items, where it contained several lienable items in excess of the claim which were not so commingled that they could not be distinguished from the nonlienable items.

SAME—CONTRACTS—CONTRACTOR'S BOND—CLAIMS — RESERVE — ASSIGNMENT—RIGHTS OF CREDITORS AND SURETY. Where a contract for the construction of a state bridge provided for the retention of the 20 per cent reserve for 30 days as a protection against claimants entitled to a lien, the reserve is a trust fund for labor and material claims against the contractor's bond, and not subject to assignment as against the rights of the surety on the contractor's bond; and this is true although the claim of the contractor's assignee was composed of lienable items, where the assignee failed to perfect its claim against the bond by filing the notice required by the statute.

APPEAL—REVIEW—THEORY OF DECISION. A decision based upon an erroneous theory will not be reversed if the conclusion is sound and the judgment is sustained by the evidence.

STATES — CONTRACTS — CONTRACTOR'S BONDS — DEMANDS SECURED —ADVANCES LOANED. Moneys loaned to a state contractor for the pur-

[1]Reported in 166 Pac. 620.

pose of, and actually used for, the payment of labor performed and materials furnished for the construction of a state bridge, for which the surety on the contractor's bond would have been liable, are debts and demands secured by the bond, for which notice of claim against the bond may be filed under Rem. & Bal. Code, § 1159.

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACT — CONTRACTOR'S BOND—RETROACTIVE STATUTE. Rem. Code, § 1161-1, making retroactive §§ 1159 and 1159-1, providing that money loaned to a contractor upon public work should not be a valid claim against the contractor's statutory bond, as theretofore provided by Rem. & Bal. Code, § 1159, is unconstitutional as to a bond and contract executed prior to the enactment of the statute, since it impairs the obligation of the contract in violation of Const., art. 1, § 23.

STATES—CONTRACTS — CONTRACTOR'S BONDS — RESERVE PAID INTO COURT—PARTIES ENTITLED—APPEAL—HARMLESS ERROR. In a controversy between the surety on a contractor's statutory bond to the state and claimants for labor and materials, over the application of the twenty per cent reserve paid into court by the state, in which there are more than enough valid claims to use up all the money in court, so that there was a deficit to be made up by the surety, it is immaterial to the surety that part of the money was awarded to a claimant who was merely entitled to a judgment, where the reserve was applied on valid claims and any injury would be to other claimants entitled to the reserve, who are not complaining.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered June 26, 1916, upon findings in favor of the defendants, in an action by a surety to determine the validity of claims to a fund due a contractor on state work, tried to the court. Reversed as to respondent Frank Everett Company; affirmed as to other respondents.

*James B. Murphy*, for appellant.

*A. A. Hull* (*W. M. Urquhart, Jr.*, of counsel), for respondents Coffman, Dobson & Company and Frank Everett & Company.

*W. E. Bishop* and *W. A. Reynolds*, for respondent Morton Hardware Company.

*Peters & Powell*, for respondent United States Steel Products Company.

HOLCOMB, J.—On the 5th day of September, 1913, Hurley & Henry entered into a contract with the state highway board to construct a bridge across the Cowlitz river, in Lewis county, Washington. Appellant became surety for the contractors, giving the usual statutory bond on September 15, 1913. The contract was what is commonly known as a lump-sum contract, providing that the contractors should be paid at intervals of one month, based on estimates of the work done during such period, and that twenty per cent of the contract price should be retained by the highway board for a period of thirty days to ascertain if the contractors had paid all just claims which would entitle the claimants to a lien. The contractors completed the bridge but failed to pay, among others, the claims of respondents Coffman, Dobson & Company, United States Steel Products Company, Frank Everett & Company, and C. G. Smith, for labor and material. The highway commission retained $5,578.75 of the amount due the contractors, pursuant to that provision of the contract above referred to. Appellant then brought this action, making as parties defendant the state highway commissioner and all the lien claimants, to fix and preserve the amount of money due from the state of Washington and to have it disbursed in payment of the claims for which it is liable. The amount due from the state of Washington was amicably agreed to be $5,-578.75, which amount was paid into court by the state; and upon a trial without a jury, a judgment was entered against appellant and in favor of the several respondents in various amounts.

On the trial below, the evidence tending to support the claims of the various respondents was introduced separately, and for this reason they will be separately discussed in this opinion.

I. The only point on which the validity of the claim of respondent United States Steel Products Company is assailed is that the claim was not filed with the highway board within thirty days from the completion of the contract and accept-

ance of the work, as provided in Rem. & Bal. Code, § 1161. It is not disputed that the claim was filed on November 11, 1914, but the controversy arises over the date that the work was completed and accepted. It is appellant's contention that the date of acceptance was September 29, 1914; while respondent United States Steel Products Company urges that the contract was completed and the work accepted on February 11, 1915, and the court so found. It is obvious, if the latter date is the correct one, the claim was filed in time to render appellant liable on the bond. The record shows that a final estimate of the work was made by an engineer of the highway department on September 29, 1914, at which time the work was actually completed, but no formal action was ever taken by the highway board to accept this work until February 11, 1915. It is appellant's argument that the bridge was completed and accepted within the meaning of the statute when the final estimate was completed by the engineer, and that the engineer had authority to, and by making the final estimate did, accept the bridge for the highway commissioner. In urging this theory, appellant relies largely on *Union Iron Works v. Strauser*, 82 Wash. 51, 143 Pac. 446; *Wheeler, Osgood Co. v. Fidelity & Deposit Co.*, 78 Wash. 328, 139 Pac. 53; *Denny-Renton Clay & Coal Co. v. National Surety Co.*, 93 Wash. 103, 160 Pac. 1.

While it is true that these cases held that the issuance of the final estimate or certificate by the architect or city engineer is conclusive on the question of acceptance, this ruling was based solely on the ground that, by the terms of the contract between the municipality and the contractor, the engineer or architect was clothed with authority to accept the structure for the municipality and did so by issuing the final estimate or certificate. We fail to find that the engineer who made the final estimate on this case derived any authority by virtue of the contract or from the highway commissioner to accept the construction, and since there was no affirmative acceptance of the bridge by such commissioner, as required by

statute, until February 11, 1915, it is apparent that such date is the time when the thirty-day statute of limitations for filing claims against the bond starts to run. The claim of respondent United States Steel Products Company was, therefore, filed in time.

· II.    Many reasons are assigned by appellant to show that respondent C. G. Smith had no valid claim against the bond, the first of which is that the notice filed was insufficient in that it failed to name the surety. *Rodgers v. Fidelity & Dep. Co.,* 89 Wash. 316, 154 Pac. 444, is relied on to support this claim. In that case the notice was held insufficient because it did not state that there was a claim against the bond nor specify the sureties; but in the instant case, the bond was mentioned in the notice and that respondent C. G. Smith intended to hold it liable, and as there was only one bond for this work, the notice satisfied the intent of the statute and was a substantial compliance with it.

The validity of the notice is also assailed on the ground that the itemized portions thereof so commingled lienable and nonlienable items as to render the whole claim void. It was held in *Gilbert Hunt Co. v. Parry,* 59 Wash. 646, 110 Pac. 541, Ann. Cas. 1912B 225, that, when the notice contained lienable and nonlienable items and from the record it was impossible to ascertain which were lienable and which were not, the whole claim was void as against the bond. But the notice in question contains several items of cement and nails the price of which amounts to more than respondent's present claim, and which the evidence shows clearly were used in the construction of and became a part of the finished structure, and are, therefore, not so commingled with nonlienable items as to render them incapable of being distinguished.

It appears that the total claim of respondent C. G. Smith amounted to $1,742.15, and that upon this debit the contractors made a payment of $1,000 and received a credit of $187 for sacks that were returned, leaving a balance still due respondent C. G. Smith. At the time the $1,000 pay-

ment was made, credit was given for the payment, but no application thereof was made until the respondent had advised with an attorney to determine his rights. Then for the first time respondent applied the money paid to him in liquidation of all charges except the lienable items. It also fairly appears that this $1,000 payment made by the contractors was part of the money they received as payment for their contract with the state, and appellant strenuously urges that respondent could not apply this money to the payment of items for which the bond was not liable, in order that the claim which could be asserted against the bond might be larger, as the surety is equitably entitled to have the moneys applied to the payment of the debt for which it is liable as surety. While this seems to be the general rule as announced in *Crane Co. v. Pacific Heat. & Power Co.*, 36 Wash. 95, 78 Pac. 460, where the application is made with knowledge of the source of the payment; where the payee is ignorant of the source of the money constituting the payment, as in the case at bar, a different rule has been adhered to by this court, viz.: That, when no instruction is given as to the application of the payment, it may be applied to a debt not secured by the bond. *Sturtevant Co. v. Fidelity & Deposit Co.*, 92 Wash. 52, 158 Pac. 740.

III. In considering the appeal involving the claim of respondent Frank Everett & Company, we find that no proper notice of claim was ever filed with the highway commissioner, nor is there any contention that the bond is liable for this claim, nor did the lower court so order, but did decree that the money paid into the registry of the court by the state, after the payment of the claim of respondent Coffman, Dobson & Company, be applied to the payment of other claimants, including respondent Frank Everett & Company, who had taken an order from the contractors on Coffman, Dobson & Company, who in turn had assigned to them by the contractors all the money due the contractors from the state. As there was no notice of claim filed, obviously appellant would not be liable on its bond, and for this reason appellant maintains

that the order given respondent Frank Everett & Company by the contractors was void because a contractor cannot assign funds to the exclusion of the rights of the surety, and the surety has a right to have the funds applied to the payment of claims for which it is liable. Whatever may be the rule as to the eighty per cent of the proceeds from the contract, it was settled by this court in *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, that the reserve (which in this case is twenty per cent) is a trust fund for labor and material claimants and not subject to assignment.

In an attempt to avoid this rule, counsel for respondent Frank Everett & Company claim that, even granting that appellant has a right to an application of the reserved funds on claims for which it would be liable, nevertheless appellant is liable for respondent Frank Everett & Company's claim because it was composed of lienable items, even though no notice of claim was filed. This last assertion is obviously untenable, and we hold the assignment void as to appellant.

IV.   Appellant also claims that the court erred in rendering a judgment in favor of respondent Coffman, Dobson & Company and allowing it to satisfy such judgment out of the funds paid into the registry of the court by the state. It appears that the contractors, in order to secure credit from respondent Coffman, Dobson & Company, assigned to it the proceeds due them from the state on the contract, and that respondent Coffman, Dobson & Company did loan certain moneys to the contractors, of which amount there was still due at the time of trial $3,300 and interest. The wording of the judgment and the fact that respondent Coffman, Dobson & Company was allowed to satisfy it from the funds in court would seem to indicate that such judgment was based on the assignment. On the authority of *Northwestern National Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, *supra*, appellant argues that the assignment is void and, therefore,

the judgment is void, as the money paid into court constituted substantially the twenty per cent reserve which is a trust fund and cannot be assigned as against the surety. Even if the theory of the trial court was erroneous, it matters not what theory it adopted as long as the conclusion is sound and the judgment can be sustained by the evidence. Respondent Coffman, Dobson & Company filed a timely notice of claim against the bond. The money loaned by it to the contractors was actually used for labor and materials and would entitle it to a valid claim against the bond by virtue of the rule announced in *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767, wherein it was held that a surety is liable for moneys traceable to the work loaned to a contractor; and particularly would this be true where the evidence clearly shows that the money was applied in the payment of claims which the surety would have been required to pay had not respondent Coffman, Dobson & Company advanced the money with which they were paid. In 1915, the legislature passed an act, found in Rem. Code, §§ 1159, 1159-1, in which it was provided that money loaned to a contractor would not be a valid claim against the bond. In Rem. Code, § 1161-1, this statute was made retroactive. The bond and the contract between the contractors and respondent Coffman, Dobson & Company were executed prior to the enactment of these statutes, and if the retroactive feature thereof is constitutional, it is apparent that respondent Coffman, Dobson & Company has no valid claim against the bond. But we consider it unconstitutional because it impairs the obligation of a contract, violating § 23, art. I, Constitution of Washington. Respondent Coffman, Dobson & Company took the assignment from the contractors and gave them credit on the strength of the law as it then existed, which made it a recoverable claim against the bond. This law entered into and became a part of the contract, and for the legislature to later deprive the bank of its right of recovery against the bond deprives it of a substantial right which impairs the obli-

gation of its contract and does not merely affect the remedy. *Strand v. Griffith*, 63 Wash. 334, 115 Pac. 512.

Respondent Coffman, Dobson & Company was, therefore, entitled to a judgment against appellant, and while technically the court should not have allowed it to satisfy this judgment out of the funds in court, the effect of allowing such a procedure benefits respondent Coffman, Dobson & Company in that it gets the actual money in place of a bare judgment. We do not consider that appellant is in a position to urge this objection, as it appears that there are more than enough valid claims to use up the money paid in court; and if the reserve would not go around, appellant would have to make up the deficit. It is not material to appellant to whom it paid the deficit so long as the reserve was properly applied on valid claims. If it injures any one it will be the other respondents with valid claims, but they are not complaining.

The judgment is therefore reversed as to respondent Frank Everett & Company, and in all other respects is affirmed.

Ellis, C. J., Parker, and Mount, JJ., concur.

Fullerton, J., concurs in the result.