[No. 14504. *En Banc.*  June 6, 1918.]

THE STATE OF WASHINGTON, *on the Relation of the State Bank of Seattle, Appellant,* v. J. W. SCOTT, *as Treasurer of the Town of Westport, et al., Respondents.*[1]

APPEAL—RECORD—STATEMENT OF FACTS—ABSTRACT. Under Rem. Code, § 1730-8, failure to abstract the evidence is not ground for striking the statement of facts.

MUNICIPAL CORPORATIONS—WARRANTS — ASSIGNMENT. Purchasers of municipal warrants take subject to all defenses that may be made against them.

SAME—WARRANTS—VALIDITY. A municipal warrant is not issued or valid until delivered into the hands of the person authorized to receive it.

SAME—PUBLIC IMPROVEMENTS — CONTRACTS — RIGHTS OF ASSIGNEE AND SURETY ON CONTRACTOR'S BOND. A city contractor may, prior to default, assign installments due and payable from the city, and the rights of the assignee being superior to those of the surety upon the contractor's bond completing the work, the city cannot subsequently issue valid warrants therefor to the surety.

SAME. Such warrants would be invalid, even in the hands of purchasers without notice through the assignee's failure to file or give written notice of the assignment.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered June 23, 1917, upon findings in favor of the defendants, in an action to compel the payment of warrants issued against a local improvement fund, tried to the court. Affirmed.

*Corwin S. Shank* and *H. C. Belt,* for appellant.

*James P. H. Callahan,* for respondent Scott.

*W. H. Abel,* for respondent Armstrong.

HOLCOMB, J.—A motion, made by respondent Armstrong to strike the statement of facts and dismiss the

[1]Reported in 173 Pac. 498.

appeal because the statement of facts comprises some-what more than one hundred pages and no abstract thereof was prepared, served and filed, was passed for consideration on the merits. It is now denied as not proper remedial procedure under Laws of 1915, p. 303, § 8 (Rem. Code, § 1730-8).

This action was brought to compel the treasurer of the town of Westport to pay certain warrants, issued by the town against the fund of a local improvement district of the town, which are held by relator.

On December 28, 1914, the town entered into a contract with one Christiansen for the construction of certain street improvements specified in an ordinance creating local improvement district No. 1. The parts of the contract which are material in this controversy provided that the contractor should commence work within twenty days after the execution of the contract, and prosecute the work with a sufficient force of men and sufficient tools and machinery and complete the whole and every part thereof within the period of ninety days, or on April 1, after the execution of the contract; that, in consideration of the full performance of the work by the contractor, the town agreed to pay the contractor in warrants drawn by the town against the special fund provided by the town in the enlarged local improvement district No. 1, at the following rates and measurements:

| | |
|---|---|
| Clearing .............................. | $75.00 |
| Grading 100 cubic yards at 35c.............. | 350.00 |
| Bridge and culverts, concrete.............. | 150.00 |
| 7535 square yards of concrete roadway at | |
| $1.14 per square yard.................... | 8,578.50 |
| Total............................ | $9,153.50 |

It was agreed that payment to the contractor should be made in the following manner: Warrants should

be drawn by the town clerk upon the special fund above described, on the first day of each calendar month as the work progressed. Warrants were to be issued for eighty per cent of the work estimated by the city engineer in charge, both for labor and material performed and used upon the job during the preceding calendar month, and the remaining twenty per cent should be retained until thirty days after the work should have been finally accepted by the town of West-port through its duly qualified officers. The contractor was required to furnish a surety bond in the penal sum of $9,153.50, conditioned for the faithful performance of the contract and for the protection of all laborers, mechanics, subcontractors and materialmen, and all persons furnishing the contractor, or any of his sub-contractors, labor, provisions and supplies for the carrying on of the work, and all persons who would be entitled to liens if the work were not being done for a municipal corporation.

In accordance with the provision therefor, Christiansen gave a bond in the sum required with the Guardian Casualty & Guaranty Company as surety. The bond obligated the surety, in the event of the default of the principal, to indemnify against any loss under the contract according to its terms, and provided that, in the event of any default on the part of the principal, a written statement of the principal facts showing such default and date thereof should immediately be delivered to the surety by registered mail at its address, and that the surety should thereupon have the right to proceed, or procure others to proceed, with the performance of the contract; and that the surety should also be subrogated to all the rights of the principal, and any and all moneys or properties that may, at the time of such default, be due, or that thereafter may become due, to the principal under the contract should

be credited upon any claim which the obligee might make upon the surety, and the surplus, if any, applied as the surety may direct, to indemnify it against loss or damage by reason of its suretyship.

Christiansen entered upon the work and furnished material and labor which, at the unit prices specified in the contract, amounted to $652 in the month of January; in February, $208.72; in March, $2,547.50. On February 19, 1915, Christiansen borrowed about $2,000 from one B. F. Armstrong, for which he gave a note payable on demand, with interest at eight per cent per annum, and on February 23, 1915, Christiansen executed an assignment to Armstrong of all warrants due or to become due to Christiansen for and in consideration of the performance of the contract with the town, and authorized and directed the proper officers of the town to make and deliver such warrants to Armstrong to the extent of $2,074.18. This assignment was not filed by Armstrong with any officer of the town at the time it was given, but the court found, with evidentiary support therefor, that, shortly after February 23, 1916, Armstrong notified the town of Westport of the assignment to him by Christiansen in the sum of $2,039.60; that the town had actual notice and knowledge thereof during the whole of March. The council took no action upon this information, and no record was made thereof in the records of the council or otherwise.

At a meeting of the council held March 29, a letter from Christiansen was read notifying the town of Westport that he had voluntarily thrown up his contract for paving the streets on account of not being able to finance the same. Thereupon a motion was adopted that the clerk be instructed to notify the bonding company by registered mail of the facts contained in the notice from Christiansen, and also telephone

their agent at Seattle. In obedience to this instruction, the clerk notified Mr. Aylmore, the attorney in fact of the bonding company, that Mr. Christiansen had abandoned the contract and that the town required the bonding company to immediately proceed to the completion of the contract. Mr. Aylmore went at once to Westport and consulted with the mayor and the town clerk. He found that there were six claims filed against the contractor for about $1,000 for labor and about $3,500 for material, and that the town officers were retaining $2,039.60, being the eighty per cent under the contract upon the estimate for work done in March. It was thereupon agreed between Aylmore and the mayor and town clerk that, if the bonding company would pay the bills which had been filed and proceed with the work, they would issue to him warrants for the above sum. In accordance with this agreement, the mayor and town clerk issued and delivered to Mr. Aylmore warrants against the fund amounting to $2,039.60; and Mr. Alymore, for the surety company, then paid the bills and completed the contract, all at an aggregate expense of about $12,300, for which they received from the town, including the above warrants, the sum of $9,210, making a loss to the surety company of about $3,000. At the next meeting of the town council after the transaction between Aylmore and the mayor and clerk, the council passed a resolution or motion ratifying the action of the mayor and clerk in delivering to the bonding company warrants for the March estimate under the contract amounting to $2,039.60. This was all done, of course, upon the theory that the surety was substituting itself for its principal and entitled to take all sums due him. At the time of receiving the warrants, Aylmore had no knowledge or notice of the Armstrong assignment or any claim on the part of Armstrong, and there was

no record of any such claim. Upon receiving the warrants, the bonding company immediately sold them to the Northern Bond & Trust Company, and subsequently relator became the owner of them.

On May 17, 1915, Armstrong filed with the town clerk a claim against the bond in the sum of $2,000 for money which he claimed he furnished Christiansen for the purpose of paying for work and materials used in the construction, and again another claim for $2,060 was filed on May 28, 1915. In neither of these claims was the assignment mentioned. Subsequently, on about June 31, 1915, Armstrong commenced an action in the superior court of that county against Christiansen, the surety company, and the town of Westport, to recover upon the claim filed against the bond. The superior court decided that there was no cause of action against the bonding company. Thereupon Armstrong was permitted to file an amended complaint to ask judgment against the city for $2,039.60, being eighty per cent of the March estimate; and, after a trial, the court, on July 8, 1916, dismissed the surety company and gave Armstrong judgment against the city for the $2,039.60, to be paid out of the funds of the improvement district. This judgment was not appealed from by the town and became final. In accordance with that judgment, the officers of Westport issued warrants to Armstrong in that amount, and the intervener, Minnie R. Armstrong, is now the owner of them. On July 17, 1916, the council of the town of Westport passed a resolution declaring the warrants held by relator to be null and void and directing the treasurer to refuse payment thereof. At the time of the commencement of this action, the town treasurer had on hand in the fund of this local improvement district the sum of $880.82, and there are no warrants outstanding against this fund prior, either in date or number, to

the warrants of this relator. The relator tendered its warrants to the town treasurer and demanded that he apply the money in his hands to the liquidation of these warrants, which was refused. Mrs. Armstrong was permitted to intervene upon the ground that she was the holder of warrants which would be affected by the action of the court in this action. The trial court made findings and conclusions and entered judgment in favor of respondents.

It is clear that only one of the sets of warrants for the eighty per cent estimate for March, amounting to $2,039.60, can be valid. It is well settled in this state that purchasers of municipal warrants take subject to all defenses that may be made against them, and if warrants are void they cannot be enforced, even in the hands of an otherwise innocent holder. *State ex rel. American Freehold-Land Mtg. Co. v. Tanner*, 45 Wash. 348, 88 Pac. 321. A warrant is not issued nor valid until delivered into the hands of the person authorized to receive it. *American Bridge Co. v. Wheeler*, 35 Wash. 40, 76 Pac. 534.

The questions to be determined are, (1) whether or not Armstrong had a prior assignment of the eighty per cent estimate for the month of March, under Christiansen's contract; and (2) whether or not the city's transaction with the bonding company through Aylmore bound it and all others subsequent thereto.

As to the first, we think there can be no question but that it was competently established that Armstrong had an assignment as early as February 23, 1915, and before any default on the part of Christiansen upon his contract, for all moneys due and to become due thereunder. The contract was a live contract until it was either performed, annulled, or abandoned. There is no showing that Christiansen had any intention, or that there were any indications in February that he

intended, to abandon the contract in March. He did not abandon it until March 29, about the end of the calendar month and near April first. It was, therefore, a valid contract up to that date, and any work which had been performed under it was for the benefit of the local improvement district of the city and, upon being completed, was fully performed. While the surety company had the right to take the place of the contractor, its principal, upon his default, nevertheless it was liable to the extent of its indemnity for all amounts obligated to be paid out under the terms of the contract, and whether in fulfilling the contract it lost any money over and above the total contract price is immaterial. Its actual total loss was much within its indemnity obligation. That Christiansen had the right, during the pendency of the contract, to dispose of the eighty per cent estimates each month, so long as he was in the performance of the contract, in any way he saw fit, even though he should squander it, leaving the surety at the mercy of the creditors, has been settled in our decisions in *Maryland Casualty Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689; *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473, and *Title Guaranty & Surety Co. v. Coffman, Dobson & Co.,* 97 Wash. 211, 166 Pac. 620. The default of Christiansen before completion of the contract work could not relate back so as to create a breach of the contract during the prior period of performance. To so declare would enable the surety to substitute itself under the provisions of the bond and obtain an advantage through the wrong of its own principal.

There is no controversy but that Armstrong loaned the amount of money represented in his note and the assignment of the warrants by Christiansen during the life of the contract before any default; and whether

or not the funds went into the contract work in whole or in part is immaterial. It probably was material in the suit which Armstrong brought against Christiansen and the surety company, upon the question of whether the surety company had notice thereof and was liable to Armstrong, if Armstrong had a substitute claim in lieu of a lien against the bond, and the fund actually went into the construction. This he evidently did not, and could not, establish. But, if validly assigned to Armstrong for a consideration, and prior to any acquisition of such funds by any other person or any lien thereon, the assignment was valid under the foregoing decisions and gave Armstrong title to the fund thereby assigned and the warrants to be issued therefor. The surety company could acquire no better title to the funds and warrants to be issued therefor, by taking the place of the principal, than he himself had at the time, and the town could give no better title. The transaction whereby the mayor and clerk attempted to pay the fund by warrants to the surety company and the attempted ratification thereof by the council were, therefore, nugatory and void, and in nowise affected Armstrong's prior title.

The judgment below is affirmed.

MAIN, C. J., FULLERTON, MACKINTOSH, and MITCHELL, JJ., concur.

PARKER, J. (concurring)—I concur in the result reached by Judge Holcomb, but upon the ground that the judgment rendered in favor of Armstrong against the city, payable out of the improvement fund, became binding upon the surety company, it being a party to the action in which that judgment was rendered. It is true the surety company was not held personally liable in that action, but judgment was rendered therein against the fund to which the surety had a right to

look for its protection to the extent of any unpaid balances earned upon the contract by Christiansen. This was, in effect, an adjudication against the surety company and against its assignees, as well as against the city, that Armstrong's claim was a valid claim against the fund. It seems to me that the mere fact that the surety company was finally dismissed from that action as to its liability upon its bond does not change the fact that the judgment was in effect against the surety company and its assignees, in so far as Armstrong's right to have his claim paid out of the improvement fund is concerned.

TOLMAN, J., concurs with PARKER, J.