[No. 13349. Department One. December 12, 1916.]

NORTHWESTERN NATIONAL BANK OF BELLINGHAM, *Respondent*, v. GUARDIAN CASUALTY AND GUARANTY COMPANY, *Appellant*.[1]

MUNICIPAL CORPORATIONS—PUBLIC WORKS — CONTRACTS — ASSIGN-MENTS—BOND—CLAIM OF LABORERS—PRIORITY. Where a bank, prior to notice of nonpayment for labor and material, took from a contractor on public works assignments of all moneys to become due to the contractor as security for advances to the contractor, and the contract contained no provision for a reserve of any percentage as security for labor and material claims but merely permitted the city to withhold payment until satisfied that all labor and material claims had been paid and on completion of the work the city paid the balance due into court, the assignments are valid appropriations of the fund afterwards paid by the city into court, prior and superior to any rights of laborers or materialmen, and hence superior to any right of subrogation in the surety on the contractor's bond.

SAME. The fact that a bank had, pursuant to agreement, advanced money to a contractor on public works, does not prevent it from taking assignments of labor claims, or impose the duty of paying.

SAME. An assignment of claims for labor against a contractor on public works includes not merely a right to receive the pay due, but operates as an equitable assignment of the laborer's rights against the contractor's bond.

SAME. A contractor having assigned to a bank the sums to grow due on a city contract as collateral for advances, before any default of the contractor, sums due the contractor are to be first applied to repay the advances; and the balance, if any, *pro tanto*, to pay labor claims assigned to and held by the bank, and the bank is entitled to judgment against the contractor's surety on its bond for the balance of the lienable labor claims.

SAME. In such a case, the bank holding assignments of claims by the contractors and their stenographer, which were not lienable claims, cannot assert any right therefor, against the fund due in court or against the bond, as against the surety on the bond paying labor claims.

Appeal from a judgment of the superior court for Whatcom county, Pemberton, J., entered July 16, 1915, upon

[1]Reported in 161 Pac. 473.

findings in favor of the plaintiff, in an action to recover money advanced to a contractor on public work, tried to the court.   Modified.

*Reeves Aylmore, Jr.,* and *S. H. Kelleran,* for appellant.
*Black & Black,* for respondent.

ELLIS, J.—The facts of this case are in part stipulated and are not disputed.   On August 25, 1913, defendant city entered into a contract with defendants Brooks & Olsen for the construction of a certain trunk water main, and at the same time took from Brooks & Olsen a bond signed by them as principals and by defendant Guardian Casualty and Guaranty Company as surety, conditioned as follows:

"The conditions of this obligation are such, That if the said principal shall perform said contract which is hereby expressly referred to and made a part hereof, according to its terms, conditions and stipulations, and shall pay as they become due, all just claims for all work and labor so performed, and all skill, or labor and all laborers, mechanics, sub-contractors and material men and all persons who shall supply such person or persons or sub-contractors with provisions and supplies for the carrying on of said work, all just debts, dues and demands incurred in the performance of said contract, and shall comply with all the requirements of the charter and ordinances of the city of Bellingham and the statutes of the state of Washington, then this obligation to be void, otherwise to remain in full force and effect."

The penalty in the bond was $25,125.50.   The contractor entered upon the performance of the work, and soon after went to plaintiff bank and arranged for loans of money with which to carry on the work.   The bank, as a condition to the making of the loans, required the contractor to execute to it an assignment of all warrants to be issued by the city under the contract, which assignment was to be collateral security for the payment of the loans.   The contractor accordingly did execute, on or about the dates they bear, assignments as follows:

"City Comptroller,                          Sept. 8, 1913.
    "Bellingham, Wash.

"Dear Sir: Will you kindly deliver to the Northwestern National Bank, all warrants or amounts due us on account of the new concrete water ditch, which contract was recently awarded to us.  Yours truly,          Brooks & Olsen,
                                            "C. M. Olsen.

"Mr. H. J. Korthaur,                        Sept. 24, 1913.
    "City Comptroller, Bellingham, Wash.
        "City

"Dear Sir: Please pay to the order of the Northwestern National Bank all the water fund warrants for construction of Trunk Water main from Lake Whatcom to Larsons Station under ordinance No. 2019.  Yours truly,

                        "Brooks & Olsen
                        "Per Brooks & Olsen
                        "by Wesley Brooks."

These assignments were at once filed with the city comptroller. Thereafter, from time to time as the work progressed, plaintiff advanced to the contractor various sums upon their eight per cent. demand notes, aggregating $21,700. From time to time, also, as warrants became due for the work, they were paid by the city in the sum received by the bank, which were applied on these notes in such amount that there now remains due upon the notes the sum of $2,300, with interest. All of the moneys advanced by the bank and evidenced by these notes was used by the contractor in the prosecution of work under the contract. In March, 1914, the bank ceased to make advances upon the notes to the contractors, but from that time on cashed time checks and vouchers issued by the contractors for labor and material entering into the work. Each of these checks bears the indorsement, "For value received I hereby assign to the Northwestern National Bank all my right, title and interest to the within time check." None of the moneys received from the city were credited by the bank to any of these checks. The time checks for labor, exclusive of three, total $5,864.91. The three time checks excluded were issued, one to the contractor Olsen in the sum

of $245, another to the contractor Brooks in the sum of $205, and the third to Cora E. Nyman, the contractors' bookkeeper and stenographer, in the sum of $130—total $580. The checks for material total $1,211.96. The contract provided that:

"The said contractor agrees to pay the wages of all persons and for assistance of every kind employed upon or about said work, and for all materials purchased therefor, and the said city of Bellingham may withhold any and all payments under this contract until satisfied that such wages, assistance and materials have been fully paid for."

It did not contain the usual provision for the payment of a certain percentage of the estimated value of work as it progressed, and for a retention of a certain percentage by the city until the work was completed to meet any unpaid labor and material claims, nor did it contain any provision for the holding up of any sum by the city, except that above quoted. This action was brought by the bank to recover the $2,300 balance due upon the notes and the amount of the time checks cashed by the bank. The city answered that, in addition to the payments made to the bank under its assignments, it had paid labor and material claims, and still had on hand the sum of $3,383.95, but was unable to determine to whom this sum rightfully belonged, and that it therefore brought the money into court "for distribution by the court according to the various rights of the claimants therefor." Defendant guaranty company answered, alleging that it had paid certain claims properly filed against the bond, and claimed subrogation to the rights of the contractors. Upon the trial, it was stipulated that defendant guaranty company was the assignee of material claimants whose claims aggregate the sum of $2,323.26. The contractors defaulted. The bank first claims the right to have paid from the funds in court the $2,300 and interest still due upon the notes, by reason of the assignments of money to become due under the contract. It then claims that the balance of the fund in court should be

applied upon its labor and material claims, and finally, that it is entitled to judgment against the guaranty company on its bond for the remaining amount.   The bank filed no claims against the bond for the $2,300 advanced to the contractors upon the notes.   It did, however, file its claim with the city, within thirty days after acceptance of the work, for the labor and material claims which it had paid and of which it had taken an assignment.   Upon these facts, the trial court sustained the claims of the bank in full.   Motion for a new trial was made and denied.   Defendant guaranty company appeals.

As pointed out in the statement of the case, the bank is asserting three classes of claims:   (1) The $2,300 and interest due upon the notes for which no claim has been filed against the bond.   This it claims solely from the money in court by virtue of its assignments from the contractors.   (2) The labor and material claims which the bank has discounted and of which it took assignments, other than the Brooks, Olsen and Nyman claims.   (3) The Brooks, Olsen and Nyman claims. We shall notice these in their order.

I.   Appellant contends that the first item of $2,300 and interest cannot be paid from the money in court because it is inferior to all of the labor and material claims, both those held by the bank and those held by appellant.   Respondent bank contends that, as to the $2,300 advanced on the assignments made to it by the contractors and of which the city was notified, it has a right to the fund held up by the city superior to any right of the surety company for moneys which that company was compelled to pay for labor and material.   This claim is based upon the case of *Dowling v. Seattle*, 22 Wash. 592, 61 Pac. 709.   The contract and supplemental agreement in that case contained a provision the same as that above set out as found in the contract here involved, that the city "may withhold any and all payments under this contract until satisfied that such wages, assistance and materials have been fully paid for."   But the contract in

that case contained a provision also to the effect that bonds
and warrants were to be issued on about the 20th of each
month during the progress of the work for seventy per cent
of the contract price, upon estimates of the city engineer cov-
ering the work done during the preceding month, the other
thirty per cent to be retained to secure laborers and material-
men who shall have performed work or furnished materials
therefor. The bond in the *Dowling* case was conditioned for
the faithful performance of the work and for the payment of
labor and material furnished upon and for the work in ac-
cordance with the contract and supplemental agreement.
Prior to his default in the work, the contractor borrowed
money from various persons, representing to them that he
needed the money to pay for labor and materials consumed
in the work. To these persons he gave assignments or orders
on the city comptroller for money then due or to become due
on estimates for work done under the contract. These as-
signments and orders were filed with the comptroller. The
contractor, after having earned $1,895.70 on the contract,
abandoned the work, leaving laborers and materialmen un-
paid. Prior to this he had received from the city a bond of
$500 in part payment of work done under the contract. So
far as the opinion shows, this was the only bond or warrant
issued prior to completion of the work. After the contractor
defaulted, the bondsmen completed the improvement in ac-
cordance with the contract. On the completion of the con-
tract, bonds and warrants were issued in the name of the
contractor for $3,459.10 in payment for the work. The
bondsmen brought action to compel all of these bonds and
warrants to be turned over and paid to the laborers and ma-
terialmen to the exclusion of the contractor's several as-
signees. The city deposited the bonds and warrants so issued
in court to abide its judgment. The court held that, because
the assignments and orders were made and accepted by the
city prior to the contractor's default, they operated as an
equitable assignment of so much of the fund in the city's

hands as was necessary to pay them, and that they were not invalidated by the subsequent default of the contractor.   The court said:

"It is true that the city, by virtue of a provision of the agreement which we have hereinbefore noted, *might* have withheld all payments from the contractor until it was satisfied that all just claims for labor and materials had been fully paid; but it does not follow from that fact, as contended by the learned counsel for appellants, that it was obliged to do so, and that, having done otherwise, it should now be held to be a trustee of the laborers and materialmen, and, as such, liable to them directly for the amount of the fund assigned and of the bond delivered to the contractor.  If these appellants had had a lien upon this fund, as they had upon the thirty per cent of the amount of the monthly estimates which was withheld by the city, there would be at least some ground for the claim that the city is their trustee.   But, in the absence of such lien, this contention cannot be sustained."

Touching the claim of the bondsmen of a right of subrogation to the fund in court as against the contractor's assignees, this court said:

"The city, as we have seen, claimed no right in or to the fund earned and assigned by Forest [the contractor] ; and therefore, so far as that fund is concerned, there is no right to which the appellants could be subrogated.   Certainly Forest could not justly claim that his assignments were invalid, and his bondsmen, having assumed and performed his contract, cannot claim anything which he could not."

If the last mentioned provision of the contract, permitting the city to withhold any and all payments until satisfied that wages, assistance and materials had been fully paid for, had no force as to assignments made without notice of the contractor's intention to default and accepted by the city without such notice, as held in the *Dowling* case, we can see no reason why the same provision should be held to have any force as against the assignments in this case, which were made by the contractors and accepted by the city under exactly the same circumstances.

But appellant here contends that the *Dowling* case was either overruled or modified in this particular by our decision in the case of *First Nat. Bank v. Seattle*, 71 Wash. 122, 127 Pac. 837. In that case, it does not appear just when the assignment was made by the contractor, Steenstrup, to the bank, but in the opinion it was intimated that it was not made until after the city had notice of the contractor's default. The money in controversy there, it was admitted, was a balance in the city's hands of the contractor's seventy per cent fund provided for in the contract. The entire thirty per cent authorized to be held up by the city had been paid out by the city to laborers and materialmen and was not involved. The bank claimed that its right to this balance of the seventy per cent under its assignment was free from all claims of laborers and materialmen. The contract contained both of the provisions found in the *Dowling* case, namely, (1) that seventy per cent on estimates should be paid to the contractor as the work progressed and thirty per cent should be held as security for laborers and materialmen; and (2) that the city might withhold all payments until satisfied that all claims for laborers, materials and assistance had been paid in full. The assignment to the bank, however, contained an express stipulation that it should not be valid against any claims for labor, materials, provisions and goods supplied and furnished in the prosecution of the work. There was no such stipulation in any of the orders or assignments in the *Dowling* case, nor in the assignments in the case now before us. On these facts we held, in *First Nat. Bank v. Seattle, supra*, that the assignment to the bank was subject to the claims for labor and materials as to this seventy per cent fund. We did not overrule or modify the *Dowling* decision, but distinguished it in that the stipulation in the assignment that it was not valid as against labor and material claims, which was not found in the *Dowling* assignments, made the assignments subject to such claims. This distinction is obviously sound and sufficient.

The other distinctions attempted in the *First Nat. Bank* case we are now satisfied are not sound.    It is true that we said that the payments in the *Dowling* case were made when due under the contract and without notice of adverse claims. This is not strictly accurate, for in the *Dowling* case the actual payments were not made until after the work had been completed by the bondsmen and all funds brought into court, and then only on an order of the court.    When we said in the case of the *First Nat. Bank v. Seattle* that, in the *Dowling* case, the seventy per cent had been paid when due and without notice, we were evidently speaking loosely of the assignments without notice as equivalent to payment, which, under the holding in the *Dowling* case, they were as between the contractor and the assignee.    Hence they bound the bondsmen.    A reexamination of the record in the case of *First Nat. Bank v. Seattle*, shows that the contract there involved was let in June, 1909.    The assignment was made to the bank by Steenstrup, the contractor, on January 4, 1910, and notice of the assignment was filed by the bank with the city comptroller on January 6, 1910.    The record and the briefs show that this must have been before any notice of failure on the contractor's part to pay the laborers and materialmen.    This was the precise situation also in the *Dowling* case.    It follows that the only just distinction between the *First Nat. Bank* case and the *Dowling* case must be found in the fact that, in the former case, the assignment to the bank itself provided that it should be invalid as against claims for labor and materials, while in the *Dowling* case, the assignments contained no such stipulation.    In other respects, the facts in the two cases were parallel.    The other distinctions made in the *First Nat. Bank* case, therefore, do not seem to be justified by the record.    That the *Dowling* case is still the law of this state as applied to the same state of facts as there found is manifest from the very recent decision in *Maryland Casualty Co. v. Washington Nat. Bank*, 92 Wash. 497, 159 Pac. 689.    In that case, as in the *Dowling* case, the contract provided for

payment to the contractor as the work progressed of a certain percentage of the money earned—in that case eighty per cent instead of seventy per cent—and for a retention of the balance—in that case twenty per cent instead of thirty per cent—as security for labor and material claims, and hence available to the surety who had to pay such claims. At the close of the work, the contractor had received his eighty per cent in full, and after notice of claims for labor and materials had been filed with the highway board and the money had been ordered held up by that board, the bank, with the culpable connivance of the county auditor, procured and cashed warrants for the remaining twenty per cent under assignment to it previously made by the contractor. We held, in substance, that this twenty per cent was a trust fund for labor and material claimants and was not subject to assignment, either as against them or as against a surety who paid such claims, but that the eighty per cent would have been subject to the assignment had it not already been paid to the contractors. In this connection we said:

"In the *Liebes* case [*State ex rel. Bartelt v. Liebes*, 19 Wash. 589, 54 Pac. 26], and in *First Nat. Bank v. Seattle*, 71 Wash. 122, 127 Pac. 837, we announced a trust to creditors *in a contractor's reserved balance*. Here, holding the surety liable for the contractor's debts by a contract supplementing statutory obligations, we have a surety's right of subrogation *to that balance* should he be compelled to pay the principal's creditors, and of his right to prevent the dissipation of the fund. In this portion justice must rigorously protect the surety. His expectation when he goes on the bond is plain; *the principal may squander eighty per cent*, leaving the surety at the mercy of the creditors, but there is at least twenty that will be applied to the creditors in spite of him. *This amount*, originally reserved to protect merely the creditors, is a collateral security of the principal available to the paying surety."

We have italicized the controlling language for emphasis. This is a distinct holding that it is only where there is a clear and express reservation in the contract of a fund to

be held up for the benefit of laborers and materialmen that there is any fund the contractor may not effectually assign by an assignment made prior to his default and notice of such default to the board or, as in this case, to the city, and that it is only as to such reserve fund that the labor and material claims have any priority over such assignments, hence only as to such reserve fund that there is any right of subrogation in favor of the bondsmen. It is true that in the *Maryland Casualty Co.* case we cited *Prairie State Nat. Bank v. United States*, 164 U. S. 227, and *Henningsen v. United States Fidelity & Guar. Co.*, 208 U. S. 404, in which cases it was held that, under the United States statutes and decisions, the whole contract price for public works is a trust fund for the payment of labor and material claims to which the bondsmen are subrogated as of the date of their bond, but it is manifest from what we have quoted above that we cited these cases only on the question of the surety's right of subrogation to the twenty per cent reserved, not as adopting the view that the whole of the contract price was a reserve fund under the contract which we were then considering.

In the case before us, the bank had taken assignments of all moneys to become due to the contractors as security for the notes, on which there remains a balance due of $2,300. These assignments were taken and filed with the city comptroller prior to any notice to any one that the labor and material claims had not been paid or would not be paid. The contract itself contained no provision for an absolute reserve of any percentage as security for labor and material claims. It contained nothing but a provision permitting the city to withhold payment until satisfied that all labor and material claims had been paid. Nothing, however, had been held up by the city at the time the assignments were made. It follows that, under the rule in the *Dowling* case, the contractors' assignments to the bank must be treated as a valid appropriation of the fund which was afterwards paid into court to the payment of the bank's notes, including this balance of

$2,300, prior and superior to any right of laborers or materialmen, hence superior to any right of subrogation in the surety. As said in the *Dowling* case, "These assignments being valid when made and assented to by the city, were not invalidated by the subsequent default" of the contractor. Any other view would make it impossible for the ordinary contractor to finance a large contract by obtaining credit with a bank on the strength of its performance.

We find no merit in the claim that the bonding company has a superior equity in this fund over that of the bank. It has no equity in the fund as against the bank, which paid its money on the strength of assignments of the fund at a time when the contractors had full right to collect and dispose of the fund as they saw fit. Moreover, it is an admitted fact in this case that the money advanced by the bank was actually used by the contractors in the performance of the contract, thus diminishing the bonding company's liability by just the amount advanced. The equities are obviously with the bank.

II. We now come to the labor and material claims (other than the Olsen, Brooks and Nyman claims) assigned to the bank. Appellant first contends that, inasmuch as the bank had agreed with the contractor to advance money for the performance of the contract, it had no right to do anything but pay these claims; that, therefore, these claims must be treated as paid and extinguished so far as the bond is concerned. This position is untenable. The claims were assignable and were assigned to the bank. The contractors are not asserting any breach by the bank of any contract with them. The bank had never undertaken to indemnify the surety company against these or any other claims. It had the same right to purchase and take an assignment of these claims that any one else would have had.

It is next urged that the assignment of these labor and material claims, in any event, carried no right to assert them against the bond. It is argued that the right of the laborer or materialman is merely a right to receive his pay under

the express or implied contract with the contractors, and that this is all the right he has by virtue of his contract; that, therefore, the assignment of the time checks was only an assignment of a right of action against the contractors. This view is too narrow. It is only by virtue of his right to receive his pay from the contractor that the laborer or materialman has any right assertable against the bond as a contract made for his benefit. His right against the bond is ancillary to and dependent upon his right against the contractors. The first right is dependent upon the second. An assignment of the second, therefore, operates as an equitable assignment of the first. *Gilmore v. Westerman,* 13 Wash. 390, 43 Pac. 345.

Nor do we find merit in the further claim made under the rule announced in the case of *Sturtevant Co. v. Fidelity & Deposit Co.,* 92 Wash. 52, 158 Pac. 740, that, as between the bank and the surety company, the moneys which were applied in payment of the first sums advanced to the contractor by the bank should be applied on the labor and material claims now held by the bank, because the surety company is surety for the labor claims and not surety for the claims upon which the application was made. The fund having been assigned as collateral to the bank's notes before any default of the contractors or notice of their intention to default, the assignment was valid and binding as against the city and the contractors, and as held in the *Dowling* case, valid as against laborers and materialmen, hence valid as against any future claim of the bonding company. The bank's knowledge of whence the money came was therefore immaterial. The question here involved was neither discussed nor decided in the *Sturtevant* case.

We are constrained to hold that the respondent bank is entitled to have the moneys in court applied first to the payment of this $2,300 and interest, and to have the balance applied in payment *pro tanto* of its claims for labor and materials, and that it is entitled to judgment against the

appellant surety company on its bond for the balance of these claims, with interest.

III.　As to the Olsen, Brooks and Nyman claims, a different case is presented. Neither of these parties had any claim assertable, either against the fund in court or against the bond, to the exclusion of the appellant's right of subrogation. Olsen and Brooks were the contractors. Miss Nyman was their bookkeeper and stenographer. None of them had a lienable claim. The assignments of their claims carried no rights except rights of action against the contractors personally.

The cause is remanded for modification of the judgment in accordance with this opinion.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.