[No. 14284.    Department One.    February 21, 1918.]

NATIONAL MARKET COMPANY, *Appellant,* v. MARYLAND CASUALTY COMPANY, *Respondent.*[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — CLAIM AGAINST BOND —ASSIGNMENT OF CLAIM—SUFFICIENCY. The assignment of laborer's checks by mere delivery and indorsement constitutes an assignment of the debts owing by the contractor to the laborers for work performed on a public improvement, and of the laborer's claims against the; contractor's bond, conditioned to pay laborers and materialmen, and authorizes the assignee to file a claim against the bond; and this, notwithstanding the checks did not show upon their face the nature of the indebtedness for which they were issued (Overruled on rehearing).

ON REHEARING.

MUNICIPAL CORPORATIONS—IMPROVEMENTS — CLAIM AGAINST BOND —ASSIGNMENT OF CLAIM—CHECKS — BILLS AND NOTES. The issuance of ordinary bank checks by a contractor to laborers, and their indorsement and delivery for value to a purchaser having knowledge that they were given for labor claims, does not operate as an assignment of the laborers' rights of lien or claims against the contractor's bond; in view of the negotiable instruments law, Rem. Code, §§ 3516, 3457, and 3579, defining bills of exchange and checks, making the same simply an order for the payment of money, and providing the effect of an indorsement, which does not under the law affect the debt or constitute an assignment thereof (PARKER, FULLERTON, and MOUNT, JJ., dissent).

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 19, 1917, upon sustaining a demurrer to the complaint, dismissing an action on a contractor's bond. Reversed.

*Howard O. Durk,* for appellant.
*Grinstead & Laube,* for respondent.

PARKER, J.—The plaintiff, National Market Company, claiming to be the assignee of certain claims for labor performed upon public work of the city of Se-

[1]Reported in 170 Pac. 1009.

attle, secured by bond executed by the defendant, Maryland Casualty Company, as surety, under Rem. Code, § 1159, seeks recovery against the defendant upon such bond. The defendant demurred to the plaintiff's complaint upon the sole ground that it "does not state facts sufficient to constitute a cause of action." This demurrer was sustained by the superior court, and the plaintiff electing not to plead further, judgment of dismissal with prejudice was rendered against it, from which it has appealed to this court.

The facts as alleged in the complaint may be summarized as follows: Prior to June, 1916, the city of Seattle entered into a contract with C. W. Coit, by the terms of which he agreed to construct for the city a certain public improvement. In compliance with his contract, Coit executed and delivered to the city a bond as prescribed by Rem. Code, § 1159, conditioned that he would pay all laborers performing work upon the contract, which bond was also executed by respondent, Maryland Casualty Company, as surety. Coit entered upon the performance of his contract, and thereafter, in June, 1916, had in his employ upon the work seven laborers, to whom he became indebted for such work during that month in sums aggregating $221.50. On July 1, 1916, Coit issued to each of these laborers, for the amount due each, his check drawn upon the Guardian Savings Bank. Shortly thereafter each of these laborers transferred his check to appellant, National Market Company, and received therefor, either in money or merchandise, the full face value thereof. These transfers were each made only by delivery of the check and indorsement in blank of the payee's name on the back thereof. Shortly thereafter the appellant presented all of these checks to the Guardian Savings Bank for payment, when payment was refused because Coit had no funds on deposit in

that bank with which to pay them. The checks all remain unpaid and are still held by appellant. Thereafter, in due time, the appellant filed with the proper city authorities notice of its claim against the bond executed by Coit with the respondent as surety, making claim for the aggregate amount of $221.50, as assignee of these several laborers. Thereupon appellant commenced this action, seeking recovery against respondent, Maryland Casualty Company, as surety upon the bond.

The real problem here for solution is, Did the assignment of these checks to appellant, by mere delivery and indorsement in blank, constitute an assignment of the debts owing by Coit to the laborers for which the checks were given? And, if so, did such assignments carry with them the claims of the laborers which they had the right to assert against respondent as security upon the bond?

Our recent decision in *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473, goes a long way towards answering these questions in the affirmative, though that case differs from this in some respects which we shall presently notice. That case involved the assignment of time checks issued to laborers for labor performed upon public work, the payment for which labor was secured by a bond such as we have in this case. The time checks were simple certificates evidencing that the laborers had worked each a certain time upon the public work and were entitled to a certain amount in payment therefor from the contractor. The time checks were assigned by the laborers to the plaintiff bank, it paying to them the face value thereof. The assignments were indorsed on the back of each time check in this form "For value received, I hereby assign to the Northwestern National Bank all my right, title and interest

to the within time check.'' Thereafter the bank filed its claim with the proper public officers and sued the surety, claiming recovery upon the bond as assignee of the laborers. In holding that the claims and security represented by the bond were both assignable, and that the assignments so made were effectual to enable the bank to file its claim as such assignee and recover upon the bond, Chief Justice Ellis, speaking for the court, at page 646, said:

"It is next urged that the assignment of these labor and material claims, in any event, carried no right to assert them against the bond. It is argued that the right of the laborer or materialman is merely a right to receive his pay under the express or implied contract with the contractors, and this is all the right he has by virtue of his contract; that, therefore, the assignment of the time checks was only the assignment of a right of action against the contractors. This view is too narrow. It is only by virtue of his right to receive his pay from the contractor that the laborer or materialman has any right assertable against the bond as a contract made for his benefit. His right against the bond is ancillary to and dependent upon his right against the contractors. The first right is dependent upon the second. An assignment of the second, therefore, operates as an equitable assignment of the first. *Gilmore v. Westerman,* 13 Wash. 390, 43 Pac. 345.''

The only difference between that case and this is that the time checks there involved were not negotiable in form, that they showed upon their face that they were issued for work performed upon the public work in question, and that they were assigned by formal words instead of by mere delivery and blank indorsement.

The checks issued by Coit to these laborers, being negotiable instruments in form, of course passed to, and became the property of, appellant by the mere delivery and indorsement in blank thereof by the several payees as effectively as if there had been indorsed over

the names of the payees formal words of assignment, as on the time checks in the *Northwestern National Bank* case above noticed. We think, however, title would have passed to appellant by such delivery and blank indorsements had these checks been mere time checks such as were involved in the *Northwestern National Bank* case, instead of ordinary bank checks upon a deposit account. In *Small v. Smith,* 120 Minn. 118, 139 N. W. 133, there were involved assignments of similar time checks to those involved in the *Northwestern National Bank* case above noticed, by mere delivery and indorsement in blank of the labor claimants. This was held to be an effectual assignment, not only of the indebtedness evidenced by the time checks, but also of the statutory lien rights of the labor claimants securing such indebtedness, and foreclosure of the liens was accordingly awarded in favor of the plaintiff, as assignee of the labor claimants, upon the theory that the time checks, though not negotiable instruments "in the sense of the law merchant," were nevertheless "the evidence and symbol of the claims for labor of the several persons therein named," and hence were assignable by delivery and indorsement in blank. Now, while it is true, as we have noticed, that the checks here involved do not show upon their face the nature of the indebtedness for which they were issued, they were upon their face evidence of indebtedness from Coit to the laborers, which indebtedness, as pleaded, was, in fact, for labor performed upon the public work. It is plain that, had the checks been reassigned to the laborers by appellant, they could have recovered from Coit upon the indebtedness for which the checks were issued, and also from the surety company upon the bond. It seems equally plain to us that appellant, as assignee of the laborers, could also recover from Coit upon the indebtedness for which the checks were is-

sued, as well as upon the checks as negotiable instruments, had they so elected. In other words, we think that, while the transfer and delivery of these checks by the laborers to respondent by delivery and indorsement in blank was a transfer of the checks as negotiable instruments, such transfer also constituted an assignment of the indebtedness for which they were issued, apart from any consideration of the law of negotiable instruments. This being the law of appellant's rights as against Coit, as we view it, it would seem to follow that the elementary rule that the assignment of a debt carries with it the security would entitle appellant to recover upon the bond as assignee of the laborers. The following observations of the learned editors of 2 R. C. L. 633, well state the law of this case determinative of appellant's rights as against respondent:

"The assignment of a debt ordinarily carries with it all liens, and every remedy or security that could have been used, or made available, by the assignor as a means of indemnity or payment, although they are not specifically named in the instrument of assignment, and although the assignment is not by any instrument in writing. In the absence of any provision to the contrary, the unqualified assignment of a chose in action vests in the assignee an equitable title to all such securities and rights as are incidental to the subject-matter of the assignment; and he may enforce them although the assignee at the time was ignorant of their existence."

See, also, 3 R. C. L. 979.

The argument of learned counsel for respondent indicates that they largely rely upon the law of negotiable instruments. For instance, they remind us that a check of the nature here involved does not operate as an assignment of the funds of the drawer which may be in the hands of the drawee, until it is accepted by the drawee. They also remind us that it is only parties to

negotiable instruments who may be held thereon, and that respondent is not a party to these checks as negotiable instruments. This, however, is not an action against the respondent upon a negotiable instrument as such. Of course, it could not be held upon any such theory, since it was not a party to these checks. Indeed, there is not here involved any question of the liability of any one upon these checks as negotiable instruments, nor is it a question of the effect of the checks as assignments of any funds belonging to Coit which might be on deposit in the bank on which they were drawn; but it is a question of these checks evidencing an indebtedness from Coit to the laborers, of what that indebtedness was for, of the assignment by the laborers to the National Market Company of that indebtedness, and the security attending it.

It seems quite clear to us that the facts pleaded show an indebtedness from Coit to the laborers for labor performed upon public work; that respondent was liable therefor to the laborers upon the bond; and that appellant succeeded to all the rights of the laborers, both against Coit, their original debtor, and against respondent as surety upon the bond. The fact that the checks were in form negotiable instruments, that they did not, upon their face, show the nature of the debt they evidenced, and that they were assigned by mere delivery and indorsement in blank, we think makes the law of this case no different from that announced in the *Northwestern National Bank* case above noticed.

The judgment of the trial court is reversed, with instructions to overrule respondent's demurrer to appellant's complaint, and take such further proceedings as are not inconsistent with the view here expressed.

ELLIS, C. J., FULLERTON, and WEBSTER, JJ., concur.

## ON REHEARING.

[*En Banc.*   June 22, 1918.]

TOLMAN, J.—This case was heretofore before this court, and a departmental decision was rendered, to which reference is made for a fuller statement of the facts. After the filing of that opinion, a petition for rehearing *En Banc* was filed, which was granted, and the case was reargued before the court *En Banc.*

A sufficient statement of the facts for present purposes is: That the appellant became the owner and holder of seven checks which it purchased from seven different payees. These checks were drawn by C. W. Coit & Company, and by them delivered to workmen employed upon a public contract which they were engaged in fulfilling. The Maryland Casualty Company, the respondent, furnished the surety bond upon such contract. The checks were the ordinary bank checks, drawn by the contractor in favor of the various laborers, on the Guardian Savings Bank of Seattle. There was nothing on the face of the checks to show what they were issued for, or differentiate them in any way from ordinary bank checks. These checks were indorsed by the various payees and delivered to the appellant, who paid value therefor in cash or merchandise. Appellant alleges knowledge on its part at the time of the purchasing of the checks that the same were issued to the various laborers for work done by them for Coit & Company under their contract. It is stipulated, however, that no assignment has ever been made of the laborers' claims other than the ordinary indorsement and delivery of the checks.

The respondent, Maryland Casualty Company, demurred to appellant's complaint setting up these facts, upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer, appellant elected to

stand upon its complaint, and judgment was entered, from which this appeal is taken.

We have repeatedly held that a labor claim assertable against the bond of the contractor engaged in a public work is assignable, and that the assignment of such a claim carries with it all of the laborer's right of action against the contractor, and operates as an equitable assignment of the laborer's right to assert his claim against the bond (*Northwestern Nat. Bank v. Guardian Casualty & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473; *Gilmore v. Westerman,* 13 Wash. 390, 43 Pac. 345); which leaves the only question to be decided here the effect of the issuance of ordinary bank checks by a contractor to a laborer, and whether the indorsement of such checks carries with it an assignment of the laborer's claim against the contractor and the right of lien, or to protection under the bond.

In *Northwestern Nat. Bank v. Guardian Casualty & Guaranty Co., supra,* it was held that the time checks there under consideration were certificates evidencing that each of the laborers had worked a certain time upon the public work at a certain rate, and were entitled to a certain amount of money in payment from the contractor. And each time check bore the indorsement: "For value received I hereby assign to the Northwestern National Bank all my right, title and interest to the within time check." The court, having these facts in mind, said:

"It is only by virtue of his right to receive his pay from the contractor that the laborer or materialman has any right assertable against the bond as a contract made for his benefit. His right against the bond is ancillary to and dependent upon his right against the contractors. The first right is dependent upon the second. An assignment of the second, therefore, operates as an equitable assignment of the first."

A doctrine which we in nowise modify, but which is clearly distinguishable, we think, from the case under consideration. In *Small v. Smith,* 120 Minn. 118, 139 N. W. 133, it is held that time checks are not negotiable under the law merchant, but are the "evidence and symbol" of the claim for labor of the person therein named.

It needs no argument to show that a time check bearing on its face such facts as are referred to in the *Northwestern National Bank* case, *supra,* is indeed the "evidence and symbol" of the claim of the laborer, and that the assignment thereof is properly held to be an assignment of the laborer's claim, carrying with it all of the equitable rights. It seems to us equally clear that a time check bearing the evidences before referred to is in nowise a negotiable instrument, does not confer upon the payee or the indorsees any of the rights which would flow from a negotiable instrument, and that the purchaser of such a time check must know that he is taking by assignment the laborer's claim and nothing more, with no right whatever of recourse upon the laborer in any event.

A bill of exchange or negotiable instrument is defined by our negotiable instruments law substantially as follows:

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand . . . a sum certain in money to order or to bearer." Rem. Code, § 3516.

Such an instrument is negotiated by indorsement and delivery, is indorsed by writing the signature of the payee thereon, and, as provided in the negotiable instruments act, Rem. Code, § 3457, every indorser who indorses without qualification warrants to all subsequent holders in due course: (1) That the instrument

is genuine; (2) that he has good title to it; (3) that all prior parties had capacity to contract; (4) that the instrument is valid and subsisting; and in addition, he engages that it will be paid on presentation, and if it be dishonored and the necessary proceedings be duly taken, he will pay the amount thereof to the holder or any subsequent indorser.

The fundamental error in our former opinion was the holding that the indorsement and delivery of the check was the assignment of the debt, instead of its being simply and only what the negotiable instruments law provides it shall be.  The ordinary bank check is not, either in law or in equity, an assignment of the fund upon which it is drawn (Rem. Code, § 3579), but is purely and simply an order for the payment of money, which in nowise affects the debt for which it is given until the order is paid; and being dishonored, leaves the drawer still indebted to the payee, the same in all respects as though the check had never been drawn and delivered.  Moreover, such a check is revocable by the drawer at any time before it is paid. *Peoples' Sav. Bank & Trust Co. v. Lacey,* 146 Ala. 688, 40 South. 346; *Pease & Dwyer v. State Nat. Bank,* 114 Tenn. 693, 88 S. W. 172; *Kaesemeyer v. Smith,* 22 Idaho 1, 123 Pac. 943, Ann. Cas. 1914C 665, 43 L. R. A. (N. S.) 100.

The equitable doctrine that the assignment of the debt will carry with it the security, which, of course, cannot be applied here because there was no assignment of the debt, has grown up for the purpose of protecting the assignee of the debt, who otherwise would have no means of protecting himself from certain loss. It is in nowise applicable in this case, first, because the debt was not assigned, and second, because the appellant purchased and accepted negotiable instruments, and its rights were fully fixed by the negotiable instru-

ments law. It had full and clear legal right, upon the dishonor of the checks, to return them to the payees, who indorsed them and delivered them to it, and receive back its money. Or, if it be urged that the payees and indorsers were execution proof and could not respond in money, there seems to be no reason why they could not, and would not, upon request, have assigned to the appellant their claims against the contractor, which had been in nowise impaired by the giving of the checks, and which were then still enforceable under the bond. And, in such an event, there could have been no question of double liability on the bond, and no doubt the claims would have been paid without litigation.

We have examined with great care all of the cases to which the industry of counsel has directed our attention, and have made independent search of the authorities, but have found no case wherein any court has held that the indorsement of an ordinary bank check by the payee carries with it to the indorsee title to the claim which the check would have paid had it been honored, or any rights, legal or equitable, under such claim.

It follows from what has been here said that the judgment of the trial court was right, and it is accordingly affirmed.

MAIN, C. J., MITCHELL, HOLCOMB, and CHADWICK, JJ., concur.

PARKER, J. (dissenting)—I adhere to the views expressed in our former decision. I think the negotiable instruments law has no controlling force as between the contractor issuing these checks and the laborers, the payees thereof; nor as between the contractor and appellant, to whom the laborers transferred the checks. Nor do I think the answer to the question of the as-

signment of any funds supposed to be on deposit in the bank against which the checks were drawn is of any consequence here. To my mind the problem simply reduces itself to this: What are the rights of the laborers as against the casualty company, the surety upon the bond, and does appellant stand in the shoes of the laborers? That the laborers, even after receiving their checks, retained all their rights as against the surety, of course, is plain, because the checks, until they should be actually paid by the bank, would not pay the laborers' claims. I think it follows that, when the laborers transferred their checks to appellant, it then stood in the shoes of the laborers as to all their rights against the contractor and the surety.

I do not think the suggestion that the contractor or casualty company might be called upon to pay the laborers' claims twice adds any weight to the argument advanced in the majority opinion, for both the contractor and his surety would have available to them all the defenses that the contractor would be entitled to make as against any other assignable, nonnegotiable chose in action. If the contractor had stopped payment upon the checks at the bank and thereafter paid the laborers without notice of the laborers having transferred their checks—which I am convinced was an equitable assignment of the debts which the checks evidenced — of course, both the contractor and the casualty company would be relieved from further obligations to pay the laborers' claims. Again, let us be reminded that it is not a question of appellant seeking recovery upon these checks as negotiable instruments.

Since writing our former decision there has come to my notice the decision of the supreme court of California in the case of *Goldman v. Murray,* 164 Cal. 419, 129 Pac. 462, wherein there was involved promissory notes, negotiable in form, given by a corporation in

payment of its debt due the payee therein named, but which notes were void as negotiable instruments because of want of authority of the corporation to issue them. The notes being assigned by the payee to the plaintiff by indorsement and delivery only, he was awarded recovery upon the theory that he thereby became the assignee of the debt for which the notes were attempted to be executed. In so holding, it was said:

"The intent of the parties—of Bowen on the one hand to assign and of the plaintiff, on the other to accept the assignment of the corporation indebtedness—thus clearly evidenced by the transaction between them, is not affected by the fortuitous circumstance that the notes themselves were invalid as corporation obligations. They still had validity, not as negotiable instruments, but as evidencing the contract between Bowen and the plaintiff, and this contract amounted to a valid equitable assignment."

Had there been some security to which the creditor to whom the notes were issued had the right to look for the payment of the debt owing him by the corporation, manifestly it would have inured to the benefit of the plaintiff as assignee of the debt.

For these reasons I dissent.

FULLERTON and MOUNT, JJ., concur with PARKER, J.