[No. 30555.  Department Two.  March 18, 1949.]

LEOPOLD M. STERN, *as Receiver, Appellant,* v. STEVE LONE, *Respondent.*[1]

*Stern & Stern* and *K. G. Smiles,* for appellant.

*Elliott & Schneider,* for respondent.

[1]Reported in 203 P. (2d) 1074.

ROBINSON, J.—This action was brought by the receiver of a food packing corporation to recover an alleged unlawful preference.

After hearing the evidence and the arguments of the attorneys, the trial judge orally announced that the action would be dismissed. Subsequently, plaintiff moved for judgment notwithstanding the oral decision, and, in the alternative, for a new trial. These motions were denied, findings of fact and conclusions of law were made, and a judgment entered dismissing the action, with prejudice. This appeal therefrom was thereupon duly taken and perfected.

On appeal, the appellant contends that the trial judge erred (1) in overruling his motion for judgment notwithstanding the oral decision; (2) in overruling his alternative motion for a new trial; and (3) in dismissing the action; and prays that this court reverse the judgment and that the trial court be ordered to enter a judgment in accordance with the prayer of the complaint.

The pertinent facts can be stated with reasonable brevity. Defendant, Lone, is a farmer. During the late summer and early fall of 1946, he delivered a considerable amount of corn to the Ingalls Packing Corporation. Sometime in the early fall, it mailed him a check for a portion thereof. On October 30, 1946, it drew another check in his favor on a Tacoma bank for $332.96. However, it did not transmit it to Lone. He was given the check when he happened to go into the Ingalls office sometime between Christmas day, 1946, and January 1, 1947. There is no evidence in the record as to what was said between the parties at the time, or that anything was said. Lone kept the check until January 23, 1947, and then deposited it in his bank at Kent. The check was honored by the Tacoma bank on January 25th, and the proceeds were credited to Lone by the Kent bank.

On May 9, 1947, Charles Adams filed, in the superior court for King county, a petition asking for the appointment of a receiver for the Ingalls Packing Corporation, and, pursuant thereto, Mr. Leopold M. Stern, the appellant here,

was, on May 20, 1947, appointed, and immediately qualified as, receiver of the said packing corporation.

The problem presented on this appeal must be solved by applying to the facts a portion of chapter 103, p. 271, Laws of 1941, entitled "Insolvent Corporations," and particularly the following:

"Section 1. Words and terms used in this act shall be defined as follows: . . .

"(c) 'Preference' means a judgment procured or suffered against itself by an insolvent corporation or a *transfer* of any of the property of such corporation, the effect of the enforcement of which judgment or transfer at the time it was procured, suffered, or made, would be to enable any one of the creditors of such corporation to obtain a greater percentage of his debt than any other creditor of the same class. . . .

"Sec. 3. *Any preference made or suffered within four (4) months before the date of application for the appointment of a receiver may be avoided and the property or its value recovered by such receiver. No preferences made or suffered prior to such four (4) months' period may be recovered,* and all provisions of law or of the trust fund doctrine permitting recovery of any preference made beyond such four (4) months' period are hereby specifically superseded." Rem. Supp. 1941, § 5831-4, § 5831-6 [P.P.C. §§ 448-1, -5]. (Italics ours.)

The appellant states that the question involved in this appeal is:

"Where a debtor delivered his check to a creditor in payment of an antecedent debt, is the date of *delivery* of the check or the date of the *payment* thereof decisive in determining whether there has been a preference?" (Italics appellant's.)

The respondent states the same question in somewhat different language. However, during the trial of the case, the contra contentions of the parties were as follows: On behalf of the respondent, it was contended that if there was a preference made, it was made during the last week of 1946, when the corporation handed Lone its check, and that it therefore cannot be avoided and recovery be had by the appellant receiver because it was not made within

four months before the date of the application for the appointment of a receiver, which application was admittedly made on May 9, 1947. See Laws of 1941, chapter 103, § 3, p. 272, Rem. Supp. 1941, § 5831-6, quoted *supra*.

The appellant, on the other hand, contends, relying upon the definition of preference in chapter 103, Laws of 1941, Rem. Supp. 1941, § 5831-4 (c), also hereinbefore quoted, that the preference was made when the Tacoma bank cashed the check on January 25, 1947, well within the four months before the application for the appointment of a receiver on May 9, 1947.

The trial court resolved the foregoing controversy in favor of the respondent. We quote paragraphs Nos. 2, 3, 4, and 6 of the findings of fact:

"(2) That prior to October 30, 1946, and at all times thereafter, the said Ingalls Packing Corporation was insolvent.

"(3) That on October 30, 1947, the said Ingalls Packing Corporation as drawer, issued its check No. 1208, in the amount of $332.96; that said check was drawn on the Puget Sound National Bank of Tacoma, and was made payable to defendant herein, Steve Lone.

"(4) That said check to defendant for $332.96 was received by said Steve Lone from the office of the Ingalls Packing Corporation in Auburn, where it had been left for said Steve Lone to pick up. That said check, which was delivered to Steve Lone between Christmas of 1946 and New Year's Day of 1947, was delivered to him as payment for, and accepted by him as payment on, five loads of farm produce; that it was negotiated through the Peoples National Bank of Washington, Kent Branch, by said Steve Lone by depositing it and having it credited to his account on January 22, 1947; that said check was honored by the drawee bank, the Puget Sound National Bank of Tacoma, on January 25, 1947.

"(6) That said Ingalls Packing Corporation, at the time said check was delivered to Steve Lone, and through January of 1947, paid all growers or farmers for produce delivered to said Ingalls Packing Corporation, and also paid all wages due for help performed, but was unable to pay many other debts, both secured or unsecured."

We further quote the court's single conclusion of law:

"That the said payment to defendant, Steve Lone, which was made between Christmas of 1946 and New Year's Day of 1947, was made more than four months prior to the petition for the appointment of a Receiver; that said payment was not a preference, and defendant Steve Lone is entitled to dismissal of the within action, with costs."

The appellant opens his argument by citing Rem. Rev. Stat., § 3579 [P.P.C. § 751-9], which reads as follows:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

This statutory provision has been applied in numerous Washington decisions. *Lincoln County v. Gibson*, 143 Wash. 372, 255 Pac. 119; *Whorf v. Seattle Nat. Bank*, 173 Wash. 629, 634-635, 24 P. (2d) 120. It was held in *National Market Co. v. Maryland Cas. Co.*, 100 Wash. 370, 380, 170 Pac. 1009, 174 Pac. 479, an *En Banc* decision correcting a previous Departmental opinion in the same cause:

"The fundamental error in our former opinion was the holding that the indorsement and delivery of the check was the assignment of the debt, instead of its being simply and only what the negotiable instruments law provides it shall be. The ordinary bank check is not, either in law or in equity, an assignment of the fund upon which it is drawn (Rem. Code, § 3579), but is purely and simply an order for the payment of money, which in nowise affects the debt for which it is given until the order is paid; and being dishonored, leaves the drawer still indebted to the payee, the same in all respects as though the check had never been drawn and delivered. Moreover, such a check is revocable by the drawer at any time before it is paid. *Peoples' Sav. Bank & Trust Co. v. Lacey*, 146 Ala. 688, 40 South. 346; *Pease & Dwyer v. State Nat. Bank*, 114 Tenn. 693, 88 S. W. 172; *Kaesemeyer v. Smith*, 22 Idaho 1, 123 Pac. 943, Ann. Cas. 1914C 665, 43 L. R. A. (N.S.) 100."

Later, in the case of *Anderson v. National Bank of Tacoma*, 146 Wash. 520, 525, 264 Pac. 8, it was said by this court:

"We have accordingly many times held that the ordinary bank check is not, either in law or equity, an assignment of the funds upon which it is drawn (§ 3579, *supra*), but is purely and simply an order for the payment of money which in nowise affects the debt for which it is given until the order is paid. *National Market Co. v. Maryland Casualty Co.*, 100 Wash. 370, 170 Pac. 1009, 174 Pac. 479, 1 A. L. R. 450."

In contending that the packing corporation's debt to Lone was paid by delivery of the check during the last week of 1946, the respondent quotes from 49 Am. Jur. 585, Statute of Frauds, § 268, as follows:

"Even though authority is somewhat limited, it seems to be generally true that a check may constitute a sufficient payment to satisfy the provision of the statute of frauds excepting cases where payment or part payment of the purchase price is made, if the check itself is accepted as payment."

We find no evidence in the record, however, to the effect that it was agreed between the corporation and Lone that the check was accepted by Lone as payment. Furthermore, the respondent closed the quotation at the end of the first sentence of the paragraph. The text goes on to say:

"Generally, however, in the absence of proof that a check given to the seller by the buyer is to constitute payment or part payment of the price, rather than the means of payment, the giving of the check is not such payment as to take the sale out of the statute of frauds, although there is authority to the effect that if the check is duly honored and paid, this will amount to a payment, at the latest, as of the time the check is paid, and that where the statute requires payment to be effectual to remove the transaction from the ban of the statute to be made at the time of the making of the contract, if a check is given by the buyer at such time and is paid on presentation in the usual and regular manner, this is a payment at the time of the giving of the check so as to satisfy the statute, as against the objection that the time of payment should be considered the time the money is actually paid on the check as distinguished from the delivery of the check."

We are, of course, not here concerned with what constitutes payment with respect to the statute of frauds, nor

are we primarily concerned with the date when Lone received "payment" for his corn. Our statutory definition of "preference," quoted earlier in this opinion, contemplates two kinds of preferences: (1) suffering a judgment, and (2) a *transfer* of any of·the property of the corporation. No judgment is involved in this case. We are primarily concerned here with whether or not the property of the corporation was diminished by a transfer of corporate property to Lone, and if so, was. the transfer made more than four months before May 9, 1947, or within that four months? In. deciding the question before us, the word "transfer" is the key word, not "payment."

The provisions of the Federal bankruptcy act are so similar to those of our insolvent corporations act (Laws of 1941, chapter 103) that there are many decisions of the ·Federal courts which are in point. We will, however, in an effort to attain reasonable brevity, refer to them only incidentally. In the opinion in *Continental Trust Co. v. Chicago Title & Trust Co.*, 229 U. S. 435, 443, 57 L. Ed. 1268, 33 S. Ct. 829, the supreme court of the United States said:

"To constitute a preferential transfer within the meaning of the Bankruptcy Act there must be a parting with the bankrupt's property for the benefit of the creditor and a consequent diminution of the bankrupt's estate."

In 4A Remington on Bankruptcy (5th ed.) 265, § 1713, discussing "Voidable Preferences," the author says:

"Unless property is actually transferred to a creditor, there can be no diminution of the estate."

That is also true under our statute on insolvent corporations.

It seems clear to us that no transfer of property was made by the delivery of the check to Lone on some day during the last week of 1946. It follows that the corporation's property was in no way diminished when the check was delivered to Lone, since he then received no property of the corporation, other than a piece of paper, by means of which he could in the future secure some of the corporation's money, if the corporation did not in the meantime

stop payment of the check and there was still sufficient of the corporation's money remaining on deposit in the bank to honor the check at the time it was presented. As it happened, there was, and it did honor the check on January 25, 1947, and Lone at once received the money through the Kent bank. It was when the check was cashed that corporate assets were transferred and a preference made. That was late in January, 1947, and within four months before May 9, 1947, the date of the application for the appointment of a receiver, and therefore a preference, which could be avoided and a recovery had from Lone by the receiver, under the Laws of 1941, chapter 103, § 3, p. 272, Rem. Supp. 1941, § 5831-6.

We think it would serve no useful purpose to further extend this opinion by a long list of citations. Only one case has been cited which clearly supports the position taken by the respondent and adopted by the trial court. *Latrobe v. J. H. Cross Co.*, 29 F. (2d) 210, 13 Am. B. R. (N.S.) 191.

In appellant's brief, it is said that an examination of Shepard's citations to date discloses no citation of the *Latrobe* case on the point at issue. The case is, however, criticized in a rather convincing note in 42 Harv. L. Rev. 950. The *Latrobe* case and the Harvard Law Review note are referred to in 3 Collier on Bankruptcy (14th ed.) 800, § 60.14. We quote briefly from the text:

"Some difficulty, however, has arisen over the problem of when a 'transfer' by check is complete, since such time is the date as of which the elements of a voidable preference will be determined. It has been held that the time of acceptance of a check by the payee is the time when the transfer is effected.[9] On the other hand and with better reasoning, it has been asserted that it is only upon payment of the check by the drawee that the transfer occurs, particularly where the drawer is actually without funds in the drawee bank at the time the check is given. Where the check is post-dated, it seems clear that the mere giving and accepting of such a check does not constitute a transfer of property; only payment by the drawee will suffice."

Footnote No. 9 to the second of the sentences in the above quotation reads as follows:

"*Latrobe v. J. H. Cross Co., Inc.* (D. C., Pa.), 13 Am. B. R. (N.S.) 191, 29 F. (2d) 210, criticized in (1929) 42 Harv. L. Rev. 950, and see discussion in n. 10, *infra*."

For the foregoing reasons, we are of the opinion that the corporation's estate was diminished when the check was cashed, not when it was delivered; that is to say, the diminution occurred late in January, 1947, and well within the four months prior to the appellant's application for a receiver on May 9, 1947. It follows that the judgment appealed from must be reversed, and that will be the ruling of this court.

It is further ordered that the existing judgment be set aside and a new judgment entered in accordance with the prayer of the complaint and consistent with this opinion.

MALLERY, SCHWELLENBACH, and HILL, JJ., concur.

SIMPSON, J., dissents.

---

May 3, 1949. Petition for rehearing denied.