[No. 19041–5–I.   Division One.   August 3, 1987.]

INTERNATIONAL COMMERCIAL COLLECTORS, INC., ET AL,
*Respondents*, v. MAZEL COMPANY, INC., ET AL,
*Defendants*, TIMBERLINE LUMBER PRODUCTS,
INC., ET AL, *Respondents*, M.D.O.
GROUP, *Appellant*.

*Ulin, Dann, Elston & Lambe, Craig D. Magnusson,
Margaret Easton Arms*, and *John Radder*, for appellant.

*Roderick Simmons* and *Simmons & Viall*, for respondent
International Commercial Collectors.

*Peggy Hughes, Montgomery, Purdue, Blankinship &
Austin, Mark J. Dynan*, and *Eisenhower, Carlson, New-
lands, Reha, Henriot & Quinn*, for respondent Timberline
Lumber Products.

RINGOLD, A.C.J.—M.D.O. Group, Inc., a general contractor on a public works project, filed a motion to recover against a contractor's bond posted by Mazel Company, Inc. Material suppliers also filed claims against the bond. After oral argument the trial court ruled M.D.O. was not entitled to any of the proceeds of the bond and entered its order disbursing the proceeds to three material suppliers. M.D.O. appeals.

M.D.O. was the general contractor on a public works project for the City of Lynnwood. One of the subcontractors on the project, Mazel, failed to pay three laborers the prevailing wage and subsequently filed bankruptcy. The Department of Labor and Industries brought suit on behalf of the laborers and obtained a judgment against Mazel for the wage discrepancy pursuant to RCW 39.12.065.[1]

To clear up outstanding claims on the project so the retainage would be released, M.D.O. paid the Department the amount of the judgment and received an assignment of the Department's/laborers' rights.[2] M.D.O., as assignee of

---

[1] RCW 39.12.065(2) provides in part:

"To the extent that a contractor or subcontractor has not paid the prevailing rate of wage . . . the director shall notify the agency awarding the public works contract of the amount of the violation found, and the awarding agency shall withhold, or in the case of a bond, the director shall proceed against the bond . . . such amount from the following sources in the following order of priority until the total of such amount is withheld:

"(a) The retainage or bond in lieu of retainage as provided in RCW 60.28.010;

"(b) The bond filed by the contractor or subcontractor with the department of labor and industries as provided in RCW 18.27.040 and 19.28.120;

"(c) A surety bond . . ., and

"(d) That portion of the progress payments which is properly allocable to the contractor or subcontractor who is found to be in violation . . ."

The amount withheld shall be released to the director to distribute in accordance with the director's determination.

[2] M.D.O. paid $7,597.50 in consideration for the partial assignment of the judgment. This amount includes $7,443 in unpaid wages, costs of $54.50 and statutory attorneys fees of $100. The total of the default judgment was $8,341.80. The discrepancy in amounts is due to the fact that M.D.O. did not pay $744.30 in statutory penalties assessed against Mazel. The statement of the assistant attorney general that M.D.O. "accepted responsibility for the prevailing wage not being paid" does not change the legal implications.

these rights, then proceeded against the $6,000 contractor's bond posted by Mazel pursuant to the Registration of Contractors Act, RCW 18.27.010 *et. seq.*

The proceeds of the bond were tendered to the registry of King County Superior Court for payment to the proper parties. Acting upon M.D.O.'s motion to disburse the bond proceeds and responding memoranda by others claiming as materialmen,[3] the court entered its stipulated order disbursing bond proceeds which distributed the entire proceeds of the bond to the materialmen.

M.D.O. contends the trial court erred in disbursing the proceeds of the bond to the materialmen because, as assignee of the laborer's claims for wages, M.D.O. had superior priority rights to the bond's proceeds. The materialmen contend M.D.O. cannot "bootstrap" itself into a position of priority through the assignment and that recent case law holds an upper–tier (general) contractor is prohibited from reaching the proceeds of a bond posted by a lower–tier (sub) contractor.

Under the common law there were no remedies that the laborers would have other than a civil suit against the subcontractor who has become insolvent, nor would the materialmen have any cause of action against the owner, but would be relegated again to an action under general principles of contract against the other party to the contract. In private projects, rather than the materialmen, laborers or contractors being relegated to actions against their employers or contractors, another remedy is provided by giving a lien to those entitled to one against the property itself—which means in effect against the owner of the property who, however, may not have contracted with any of the parties entitled to a lien.

This not being feasible in public projects, statutes have been enacted to provide for the withholding of sums by the public agency to constitute security for those who are given

---

[3]The other materialmen were International Commercial Collectors, Inc., Timberline Lumber Products, Inc., and Parker Paint Manufacturing Company.

statutory liens. RCW 60.28. Similar to liens provided in the area of private projects, these statutes creating liens are in derogation of common law and thus must be strictly construed. *CH2M Hill v. Greg Bogart & Co.*, 47 Wn. App. 414, 416–17, 735 P.2d 1330 (1987).

Here the insolvent subcontractor failed to pay prevailing wages on a public works project as required by RCW 39.12. That chapter also provides a remedy for failing to pay the prevailing wage under RCW 39.12.065, and permits the Director of Labor and Industries, acting in the stead of the laborers who have the highest priority, to seek recovery on the retainage or bond in lieu of retainage as provided in RCW 60.28.010.[4] Materialmen and suppliers who have not been paid are also entitled to proceed against the retainage if appropriate notices are given under RCW 60.28 after the laborers' claims have been satisfied. *See* RCW 60.28.040. Here the materialmen failed to give the appropriate notice, and thus they could not recover from the retainage.

Rather than following through on the statutory remedy provided by proceeding against the retainage, which would have reduced the retainage by the sum of $7,000 plus, the Director of Labor and Industries accepted the offer of M.D.O. to pay the laborers' claim of $7,443. M.D.O. thus eliminated any claim of the laborers' against the retainage, freeing the release of the retainage, and took an assignment from the Department of the laborers claims under RCW 18.27.040. M.D.O., not wanting to absorb the loss, sought a remedy.

In addition to the statutes providing for the establishment of the retainage, every contractor doing business in

---

[4]RCW 60.28.010 provides in part:

"(1) Contracts for public improvements or work . . . shall provide, and there shall be reserved by the public body from the moneys earned by the contractor . . . a sum not to exceed five percent, said sum to be retained by the . . . city . . . as a trust fund for the protection and payment of any person . . . subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work . . ."

the state is required to register and post a bond of $6,000. The procedure for disbursement of bond proceeds when the claims against the bond exceed its amount is given in RCW 18.27.040(4) which provides in pertinent part:

[I]f the actions commenced and pending at any one time exceed the amount of the bond then unimpaired, claims shall be satisfied from the bond in the following order:

(a) Labor, including employee benefits;

(b) Claims for breach of contract by a party to the construction contract;

(c) Material and equipment;

(d) Taxes and contributions due the state of Washington;

(e) Any court costs, interest, and attorney's fees plaintiff may be entitled to recover.

The statute thus establishes priority for claims with laborers' claims, again, given highest priority. Ordinarily, M.D.O. should not have any priority to the bond. As assignee of the laborers' claims for wages, however, M.D.O. maintains that it comes under subsection (4)(a) and has priority over the materialmen's claims which fall under subsection (4)(c). Payment of the laborers'/M.D.O.'s claims would exhaust the bond proceeds leaving the materialmen's claims unsatisfied. The trial court refused to disburse the bond proceeds to M.D.O., and distributed the proceeds to the materialmen. We find this to be in error.

Under common law and by statute, the laborers would not have any cause of action against M.D.O. M.D.O., however, was entitled to all of the retainage, once the labor claim was eliminated. Rather than requiring the Director to go through the entire formal procedure to recover the money from the retainage, M.D.O. paid the amount due the laborers directly, expediting the process. By taking the assignment and through the principles of subrogation, M.D.O., therefore, stands in the same position as the laborers in establishing priority under RCW 18.27.040.

It is well established that an assignee stands in the shoes of his assignor. *Paullus v. Fowler,* 59 Wn.2d 204, 212, 367 P.2d 130 (1961). Contractual rights can be assigned

unless the assignment is forbidden by statute or is otherwise inoperative on public policy grounds. Restatement (Second) of Contracts § 317 (1979).

> [A] labor claim assertable against the bond of the contractor engaged in a public work is assignable, and that the assignment of such a claim carries with it all of the laborer's right of action against the contractor, and operates as an equitable assignment of the laborer's right to assert his claim against the bond . . .

*National Mkt. Co. v. Maryland Cas. Co.*, 100 Wash. 370, 378, 170 P. 1009, 174 P. 479, 1 A.L.R. 450 (1918) (citing *Northwestern Nat'l Bank v. Guardian Cas. & Guar. Co.*, 93 Wash. 635, 161 P. 473 (1916); *Gilmore v. Westerman*, 13 Wash. 390, 43 P. 345 (1896)).

■ From a review of the statutes, we find no obligation on the part of the contractor, M.D.O., to pay the prevailing wage due the laborers by the subcontractor. The sole theory upon which denial of the M.D.O. position as legitimate assignee and subrogee could be based is an interpretation of some language in RCW 39.12.065(2) which provides in part: "To the extent that a contractor or subcontractor has not paid the prevailing rate of wage under a determination issued [by the director] . . ." If this language were construed as imposing on the general contractor a nondelegable duty to pay the prevailing wage to the subcontractors' employees, M.D.O. would have an independent, legal obligation to pay the wage discrepancies. We do not read such an intent into the statute. We thus find the assignment taken by M.D.O. to be valid, properly entitling it to priority rights under the bond.

The materialmen contend the recent holding in *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.*, 105 Wn.2d 353, 715 P.2d 115 (1986) is controlling and prevents an upper–tier contractor such as M.D.O. from recovering on a lower–tier contractor's bond. *Stewart Carpet Service* is distinguishable. In that consolidated case, upper–tier contractors sued in their own right to recover damages resulting from the negligent performance of work by lower–tier

contractors, which forced the hiring of other subcontractors to complete the work and compensating unpaid material suppliers. The court evaluated the contractors' claims in light of the public policy of protecting the public as enunciated in RCW 18.27.140 and determined that the Legislature did not intend for upper–tier contractors suing for breaches of contract to be beneficiaries of surety bonds posted pursuant to RCW 18.27. In the case sub judice, M.D.O. is suing, not in its own right, but as an assignee of the laborers' rights to wages. Respondents' reliance on *Stewart Carpet Service* is misplaced.

As assignee of the Department's rights to the laborers' claims for wages, M.D.O. should have been given priority over the claims of the materialmen. *See generally* Restatement (Second) of Contracts § 340 (1979).[5] It was error for the superior court to disburse the proceeds of Mazel's bond to the materialmen when the claim of M.D.O., as assignee of the laborers' claims, had superior priority.

We reverse and remand for proceedings consistent with this opinion.

SWANSON and GROSSE, JJ., concur.

---

[5]The principal that "an assignment transfers to the assignee the same right held by the assignor, with its advantages and disadvantages, applies to priority of payment in insolvency proceedings." Restatement § 340, comment, at 86.