IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KENCO CONSTRUCTION, INC., a Washington Corporation, | ) ) ) | No. 79853-7-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| PORTER BROTHERS CONSTRUCTION, INC., a Washington Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |
| BEMO USA CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| KENCO CONSTRUCTION, INC., a Washington Corporation; and RLI INSURANCE COMPANY (Bond No. SSB397726), | ) ) ) ) ) | |
| Respondents, | ) ) | |
| PORTER BROTHERS CONSTRUCTION, INC., a Washington Corporation; HIGHLINE PUBLIC SCHOOL DISTRICT NO. 401, a public school district, | ) ) ) ) ) | |
| Defendants, | ) ) ) ) ) | |

| HARTFORD FIRE INSURANCE COMPANY (Bond No. 52BCSD1578), a foreign corporation, | ) ) ) |
|---|---|
| Appellant. | ) ) ) |
| | ) |
| TOTEM ELECTRIC OF TACOMA, INC., a Washington Corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| PORTER BROTHERS CONSTRUCTION, INC., a Washington Corporation; HIGHLINE PUBLIC SCHOOL DISTRICT NO. 401, a public school district, | ) ) ) ) ) ) |
| Defendants, | ) ) |
| HARTFORD FIRE INSURANCE COMPANY (Bond No. 52BCSD1578), a foreign corporation, | ) ) ) ) |
| Appellant. | ) ) ) |

HAZELRIGG, J. — Hartford Fire Insurance Co. (Hartford) seeks reversal of orders granting disbursal of retainage funds to RLI Insurance Co. (RLI) and denying Hartford's request for disbursal of the funds. The trial court did not explain its reasons for giving priority to RLI's claim over Hartford's. Because the record shows that RLI assigned away the judgment on which its claim was based, it did not have a superior claim to the retainage funds. We reverse and remand for further proceedings consistent with this opinion.

FACTS

Background

In 2004, Hartford Fire Insurance Co. (Hartford) and Porter Brothers Construction, Inc. (Porter), executed a general indemnity agreement (GIA) in favor of Hartford as partial consideration for Hartford's agreement to issue surety bonds on Porter's behalf. Under the GIA, Porter agreed to indemnify and hold Hartford harmless from any losses sustained because of such a bond. Porter agreed to assign all rights in, arising from, or related to any bonds or bonded contracts to Hartford. The GIA provided that these assignments would take effect with respect to each bond as of the bond's execution date but would only become operative in the event that Porter failed to uphold its obligations in some way.

In 2011, Porter entered into a contract with Highline School District (Highline) for the construction of Raisbeck Aviation High School. Hartford, as surety, issued a performance and payment bond for the project on behalf of Porter, as principal, and Highline, as obligee. The bond guaranteed the payment of Porter's subcontractors and material suppliers on the project to protect and indemnify Highline from any claims or demands for payment. Any unpaid laborer, mechanic, subcontractor, or material supplier could "sue on this bond for the use of such Claimant, prosecute the suit to final judgment for such sum or sums as may be justly due Claimant and permitted under statute, and have execution thereon."

As required by RCW 60.28.011(2), Highline also reserved a portion of the money earned by Porter as a trust fund for the protection and payment of laborers,

subcontractors, and suppliers. The construction contract between Highline and Porter provided that this retainage would not become due to Porter until Porter submitted "an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work . . . have been paid or otherwise satisfied."

In 2013, Kenco Construction Co. (Kenco), a subcontractor on the project, filed a suit against Porter for breach of contract, alleging that Porter failed to make required payments to Kenco. Kenco also filed a lawsuit against Hartford and the bond. Porter counterclaimed for breach of contract and brought a third party claim against Kenco's surety, RLI Insurance Co. (RLI). Another subcontractor, Totem Electric of Tacoma, Inc. (Totem), also filed a lawsuit against Porter, Hartford, and the bond. The cases were consolidated. At trial on the contract dispute between Totem, Kenco, and Porter, the parties stipulated that the court would apply chapter 60.28 RCW to determine any award to the parties from the retainage funds. The jury found in favor of Kenco and Totem. Porter and Hartford appealed the verdict.

On October 12, 2015, Hartford filed the GIA with the Washington State Department of Licensing as a UCC-1 financing statement, listing Porter as debtor and Hartford as creditor. The financing statement covered "all right, title, and interest in any contract, including but not limited to progress payments, deferred payments, retained percentages, compensation for extra work and proceeds or any related claims."

On November 6, 2015, Porter's remaining claims against RLI were dismissed on summary judgment. The same day, RLI brought a motion for

- 4 -

attorney fees and costs requesting a judgment against Porter in the amount of $453,388.11.

Later that month, Porter executed an irrevocable assignment transferring to Hartford all of its rights to proceeds from the Raisbeck Aviation High School project. The document assigned to Hartford "all Contract Funds of any nature, including, but not limited to, progress payments, earned or unearned funds, change orders, extras, claims of any nature, retainages, with all the interest accruing thereon, and whether said Contract Funds are due now or in the future."

On July 25, 2016, the court granted RLI's motion for attorney fees and awarded RLI $471,414.22. The court entered the following judgments on July 25, 2016 and August 5, 2016:

| Creditor | Debtor | Amount | Referencing |
|---|---|---|---|
| Kenco | Porter Hartford Retainage fund | $2,570,252.75 | Jury award |
| Kenco | Porter Hartford | $1,305,932.89 | Attorney fees and costs, expert fees |
| Totem | Porter Hartford Retainage fund | $1,981,654.79 | Jury award, attorney fees and costs, expert fees |
| RLI | Porter | $471,414.22 | Attorney fees and costs |

RLI's Writ of Garnishment

On October 7, 2016, Highline moved for leave to deposit the retainage funds totaling $1,271,617.06 into the court registry. In an attempt to collect on its judgment against Porter, RLI issued a writ of garnishment to Highline on October

12, 2016 seeking any of Porter's property in Highline's possession, aimed primarily at the retainage funds. In Highline's answer to the writ of garnishment, it asserted that it did not have possession of or control over any funds, personal property, or effects of Porter's except for any interest that Porter had in the retainage. Highline argued that the retainage was fully encumbered because of the multiple competing claims against the retainage by Porter's subcontractors and suppliers and, because the retainage funds were not due and payable to Porter, the retainage was not subject to garnishment.

The court granted Highline's motion and ordered Highline to deposit the funds into the court registry "except to the extent inconsistent with its obligation to answer RLI's writ of garnishment." The court ordered that it would determine the appropriate disbursement of the retainage in accordance with chapter 60.28 RCW "upon proper application by any party."

Porter and Hartford then filed a motion to quash the writ of garnishment for the same reasons expressed in Highline's answer to the writ. They also argued that Hartford had a superior claim to the retainage because of the UCC-1 financing statement filed the year before. RLI responded that the "motion to quash confuses the issue of the validity of the Writ with the issue of whether or not [Highline] had any property of [Porter's] that was subject to the Writ. . . . [T]he resolution of that question is not before the Court and has no impact on if the Writ itself was properly issued."

Before the motion to quash was resolved, Totem filed a motion requesting that the court determine whether RLI's writ of garnishment was effective against

the retainage fund and, if not, requesting that the court release the retainage to Totem and Kenco on a pro rata basis respective to their judgment recoveries. Highline did not oppose the motion but informed the court that it had not deposited the retainage funds into the court registry because of the pending motion to quash the writ.

The court addressed the pending motions on July 6, 2017. The court denied Totem's motion to release the retainage funds to Totem and Kenco because Porter had filed supersedeas bonds and execution on the Totem and Kenco judgments was stayed pending appeal. The court noted that Porter had not filed a supersedeas bond as to the RLI judgment. Accordingly, execution on the RLI judgment was not stayed. The court addressed the motion to quash as follows:

> [Porter] and Hartford filed a motion to quash RLI's writ, arguing that RLI had no direct claim to the Retainage Funds. This is true. But [Porter] and Hartford misapprehend the Writ's aim. The Writ properly requested from [Highline] any funds due to [Porter] regardless of their source. The fact that RLI has no direct claim to Retainage Funds is irrelevant to the question of whether it may appropriately seek funds owned by [Porter] that might come from the Retainage.
> RLI's Writ of Garnishment was valid. [Highline]'s Answer was appropriate. No one has controverted that Answer, not even [Porter] and Hartford by way of their motion to quash the Writ. [Porter] and Harford's motion to quash the Writ is DENIED.

The court also ruled that the writ did not prevent Highline from depositing the retainage into the court registry and directed it to do so. The following year, this court filed an opinion largely affirming the jury verdicts and summary judgment order but reversing the award of expert fees to Kenco and Totem. See Kenco Constr., Inc v. Porter Bros. Constr., Inc., No. 74069-5-I, slip op. at 2–3 (Wash. Ct. App. June 11, 2018) (unpublished),

- 7 -

http://www.courts.wa.gov/opinions/pdf/740695.pdf. Porter and Hartford moved for reconsideration, which was denied.

Satisfaction and Assignments of Judgments

On August 17, 2018, Hartford paid Kenco $4,469,948.18 in full satisfaction of "all amounts awarded under the judgments [dated August 5, 2016], plus post-judgment interest through August 17, 2018, with the exception of expert fees and costs awarded by the trial court but reversed on appeal." Hartford noted that the payment was "not intended to satisfy Kenco's application for attorney fees and costs, which is presently pending before the Court of Appeals."

On November 16, 2018, Totem filed a full satisfaction of judgment stating that its judgment against Porter, Hartford, and the retainage had been "satisfied in full as against Defendant Hartford Fire Insurance Company only" but remained in full force and effect as to Porter and the retainage. Totem fully assigned the remainder of its judgment against Porter and the retainage to Hartford.

In December 2018, Kenco and RLI settled a lawsuit that RLI had filed against Kenco seeking recovery of its unreimbursed losses in the amount of $774,106.21 incurred as a result of claims related to its bonds on the Raisbeck project. Kenco agreed to pay RLI $700,000, and RLI agreed to assign its judgment against Porter to Kenco and dismiss the pending lawsuit.

On December 31, 2018, a commissioner of this court entered a notation ruling ordering Porter to pay attorney fees and costs on appeal to Kenco in the amount of $212,353.26 and to RLI in the amount of $47,416.

Disbursal of Retainage Funds

On February 28, 2019, RLI filed a motion to disburse $703,515.09 from the retainage funds in the court registry. In its motion, RLI noted that "[a]s of this filing, all of Kenco's judgments against [Porter] have been fully satisfied" but "RLI's judgment against [Porter] and the related Writ of Garnishment against [Porter's] Retainage held in the Court's Registry remains an unresolved issue." RLI argued that, because Kenco and Totem had been paid, the only potential claims to the retainage were the RLI garnishment, Porter's claim, and Hartford's claim as Porter's surety. RLI argued that it was entitled to priority in the retainage funds because Hartford had no statutory claim to the retainage, the retainage was now Porter's unencumbered property subject to RLI's writ of garnishment, and the equities favored satisfaction of RLI's judgment over Hartford's.

Kenco's attorney filed a declaration in support of RLI's motion in which he stated that "[a]ll of Kenco's judgments against Porter Brothers Construction, Inc. ('PBC') have been satisfied in full, and Kenco no longer has any claim to the PBC retainage." The declaration included an exhibit showing that the principal amounts and accrued interest through February 15, 2019 on RLI's attorney fee awards from the trial and appellate courts totaled $703,515.09.

Hartford opposed RLI's motion and filed a competing motion to disburse the entire retainage fund to Hartford, arguing that it was the only party with "an unassailable property interest" in the retainage. Hartford argued that its rights in the retainage arose out of its position as Kenco and Totem's equitable subrogee, assignee of Totem's judgment against the retainage, assignee of Porter's rights to

the retainage, and holder of a prior perfected UCC-1 security interest in contract proceeds that included the retainage.

RLI and Kenco both filed responses in opposition to Hartford's motion. RLI again argued that its interest in the retainage was superior to Hartford's. Kenco stated in its separate response that it sought "disbursement of the retainage held in the Court's Registry in order to satisfy accrued and subsisting claim [sic] against the retainage, and oppose[d] Hartford's Motion seeking disbursement of the retainage for its own benefit." It argued that it maintained an interest in the retainage as a statutory claimant "for the satisfaction of its claim for attorney fees for which it paid to reimburse RLI [sic]." Kenco stated that, based on its indemnity obligation, it had "agreed to reimburse RLI $700,000.00—$600,000.00 of which [had] already been paid."

On March 18, 2019, the trial court granted RLI's motion and ordered that funds in the principal amount of $703,515.09 were "to be disbursed by check made payable to: RLI Insurance Company." The court denied Hartford's motion. Neither order included any written explanation for the court's decision. RLI received disbursement of its requested portion of the retainage. Hartford filed a motion for reconsideration and clarification, requesting that the court reconsider its decision or, in the alternative, correct its orders to set forth the basis underlying the court's decision and clarify the fate of the remaining retainage funds in the court registry. The motion was denied without explanation. On April 10, 2019, Hartford filed a notice of appeal seeking review of the orders granting RLI's motion to disburse,

denying Hartford's motion to disburse, and denying Hartford's motions for reconsideration and clarification.

Actions While Appeal Was Pending

On May 10, 2019, Kenco executed a full satisfaction of judgment for each of its August 5, 2016 judgments against Porter, Hartford, and the retainage. The satisfaction of judgment from the jury award included the post-judgment interest, attorney fees, costs, and expenses awarded on appeal, which had "already been satisfied by Hartford's delivery of a check in the amount of $212,353.26 on or about January 4, 2019." The documents explicitly did not modify the court's order to disburse funds from the registry and stated that they "shall not be construed [as] having any applicability to the funds which were the subject of the Court's March 15, 2019 Order." Kenco asserted that the satisfaction of judgment was "without prejudice to any award of fees, costs, and other expenses that may arise" from Hartford's appeal of that order.

On May 16, 2019, Hartford moved to disburse the remaining retainage funds in the court registry. Kenco opposed the motion, arguing that Hartford was essentially filing another motion for reconsideration and that RAP 7.2 would require approval of the appellate court before any order on appeal was modified. The court granted Hartford's motion without explanation and ordered the superior court clerk to disburse the $570,183.44 balance of the retainage, plus any accrued interest, to Hartford.

RLI did not file a responsive brief in this appeal. Kenco appeared as the respondent.

ANALYSIS

I.    Disbursal of Retainage Funds

Public works projects are subject to the provisions of chapter 60.28 RCW. On such projects, the public owner must reserve "a contract retainage not to exceed five percent of the moneys earned by the contractor as a trust fund for the protection and payment of . . . [t]he claims of any person arising under the contract."  RCW 60.28.011(1)(a).  "Every person performing labor or furnishing supplies toward the completion of a public improvement contract has a lien" on the contract retainage.  RCW 60.28.011(2).  "The employees of a contractor or the contractor's successors or assignees who have not been paid the prevailing wage under such a public improvement contract shall have a first priority lien against the bond or retainage prior to all other liens."  RCW 60.28.040(5).

Any claimant must give notice of the lien within 45 days of completion of the contract work.  RCW 60.28.011(2).  After the 45-day notice period has expired and "the claims of material suppliers and laborers who have filed their claims, together with a sum sufficient to defray the cost of foreclosing the liens of such claims, and to pay attorneys' fees, have been paid," the public owner shall pay any remaining balance of the retainage to the contractor.  RCW 60.28.021.

Hartford contends that the trial court erred in granting RLI's motion to disburse the retainage fund and denying Hartford's motion.  The parties dispute the applicable standard of review.  Hartford contends that the underlying facts of the dispute over the retainage are not contested and the appeal is limited to issues of law.  Where the pertinent facts are not in dispute, appellate courts review the

legal issue of the priority of one lien creditor over another de novo. Shelcon Constr. Grp., LLC v. Haymond, 187 Wn. App. 878, 897, 351 P.3d 895 (2015). Kenco argues that we should review the court's order for an abuse of discretion because the ruling was based in equity. Although the motions before the trial court contained both legal and equitable arguments, there is no indication that the trial court's decision was based in equity. The parties appear to agree on all material facts of this case. We review the issue of the priority of creditors de novo.

A. Disbursal to RLI

Hartford argues that RLI did not have standing to enforce its judgment against Porter because it had previously assigned the judgment to Kenco.

An action may only be prosecuted by the real party in interest. CR 17(a). "The real party in interest is the person who possesses the right sought to be enforced." Sprague v. Sysco Corp., 97 Wn. App. 169, 176 n.2, 982 P.2d 1202 (1999). An assignor of a cause of action may not bring suit on that cause of action because they are no longer the real party in interest. See Bench v. State Auto. & Cas. Underwriters, Inc., of Des Moines, Iowa, 67 Wn.2d 999, 999–1000, 408 P.2d 899 (1965). Similarly, a judgment creditor may assign a judgment, and the assignee possesses the same rights in the judgment as the assignor. Assoc. Indem. Corp. v. Wachsmith, 2 Wn.2d 679, 694-95, 99 P.2d 420 (1940). An assignee stands in the shoes of the assignor. Int'l Commercial Collectors, Inc. v. Mazel Co., Inc., 48 Wn. App. 712, 716, 740 P.2d 363 (1987). "On a valid assignment of a judgment the assignee succeeds to all the rights, interest and

authority of his assignor, including the debt or claim upon which the judgment was based." Johnson v. Dahlquist, 130 Wash. 29, 30, 225 P. 817 (1924).

RLI argued that it was entitled to retainage funds based on its writ of garnishment. In its order denying the motion to quash the writ, the superior court found that RLI had no direct claim to the retainage, and this order was never appealed. RLI sought disbursal of $703,515.09, a figure based on a calculation of the principal and interest due on RLI's judgment against Porter and its award of attorney fees and costs on appeal. This amount, plus interest, was disbursed to RLI, indicating that the court accepted RLI's argument that its claim to the retainage stemmed from the writ. The writ of garnishment was an attempt by RLI to enforce its judgment against Porter. When RLI assigned its judgment against Porter to Kenco, it lost its right to enforce that judgment. Therefore, after the assignment, RLI was not entitled to assert a claim to the retainage based on the writ.

In its brief, Kenco admits that it "agrees with Hartford's argument about the real party in interest." Kenco also argues that it, not RLI, is the actual claimant to the retainage funds and that it is entitled to retainage funds for legal expenses paid to RLI. Kenco and RLI appear to have settled any litigation costs owed to RLI under the parties' indemnity agreement. However, the retainage funds were not disbursed to Kenco, nor was there any indication that the funds were disbursed to RLI to satisfy any of Kenco's outstanding debts. Kenco's argument does not explain why RLI would be entitled to the retainage funds when Kenco had already settled its debt to RLI based on its indemnity obligation. Despite counsel's

- 14 -

assertion at oral argument that Kenco succeeded to the retainage funds after they were disbursed to RLI, the record does not reflect any transfer to Kenco, nor would such a transfer support the argument that the original disbursal to RLI was appropriate. Because RLI was not entitled to assert a claim to the retainage based on its writ of garnishment after it assigned the judgment sought to be garnished to Kenco, the trial court erred in disbursing the retainage finds to RLI.

### B. Priority of Claims

Although we conclude that the court erred in disbursing the retainage funds to RLI, we will address the issue of priority as between Hartford and Kenco because this issue is likely to arise on remand.

#### 1. Hartford's Assumption of Totem's Statutory Rights

Hartford contends that it had priority because Totem assigned its statutory claim against the retainage to Hartford and that claim was never satisfied. Kenco argues that Hartford cannot step into Totem's shoes as a statutory claimant because the definition of a qualifying "person" who holds a lien against the retainage under RCW 60.28.011 does not include successors or assigns.

"[T]hese statutes creating liens are in derogation of common law and thus must be strictly construed." Int'l Commercial Collectors, Inc., 48 Wn. App. at 715. The statute defines a "person" as "a person or persons, mechanic, subcontractor, or materialperson who performs labor or provides materials for a public improvement contract, and any other person who supplies the person with provisions or supplies for the carrying on of a public improvement contract." RCW

60.28.011(12)(b). Totem was a subcontractor who performed labor on the Raisbeck project, and it asserted a lien against the retainage in the manner required by RCW 60.28.011. Totem later obtained a judgment against Porter, Hartford, and the retainage. As a statutory claimant, Totem held a first priority lien against the retainage. When Hartford satisfied the judgment against it, Totem fully assigned the judgment against Porter and the retainage to Hartford.

Although Hartford may not fall within the definition of a "person" who may claim a lien and was not a direct statutory beneficiary, it argues that, once Totem claimed a lien as a qualifying person, Totem's statutory claim transferred with the assignment of judgment. As noted above, an assignee possesses the same rights in a judgment as the assignor and succeeds to all of the assignor's rights, interest and authority. Assoc. Indem. Corp., 2 Wn.2d at 694-95; Johnson, 130 Wash. at 30.

In support of its argument that statutory rights under RCW 60.28.011 are assignable, Hartford analogizes this case to one in which we considered whether laborers' statutory rights under RCW 18.27.040[1] could be assigned. Int'l Commercial Collectors, Inc., 48 Wn. App. 712. That statute provides the procedure for disbursement of bond proceeds when the claims against the bond exceed its amount. Id. at 716. Laborers' claims are given highest priority under the statute. Id. In the cited case, an insolvent subcontractor failed to pay prevailing wages on a public works project, and the general contractor offered to pay the laborers' claims. Id. at 715. By doing so, the general contractor "eliminated any

---

[1] This statute requires contractors to file a surety bond with the Department of Labor and Industries against which unpaid laborers or materialmen may file a claim. RCW 18.27.040(1), (3).

claim of the laborers' against the retainage, freeing the release of the retainage, and took an assignment . . . of the laborers['] claims under RCW 18.27.040." Id. This court determined that, "[b]y taking the assignment and through the principles of subrogation, [the general contractor], therefore, stands in the same position as the laborers in establishing priority under RCW 18.27.040." Id. at 716 (alteration in original).

Although concerning a different statute, International Commercial Collectors, Inc. suggests that a non-statutory beneficiary can step directly into the shoes of a statutory beneficiary by way of assignment. The court noted:

> "[A] labor claim assertable against the bond of the contractor engaged in a public work is assignable, and that the assignment of such a claim carries with it all of the laborer's right of action against the contractor, and operates as an equitable assignment of the laborer's right to assert his claim against the bond."

Id. at 717 (quoting Natl. Mrkt. Co. v. Maryland Cas. Co., 100 Wash. 370, 378, 174 P. 479 (1918)). Similarly, RCW 60.28.011 does not forbid the claimant from transferring their rights to another party, and Hartford succeeded to Totem's statutory claim to the retainage when Totem assigned Hartford its judgment against the retainage. Therefore, Hartford holds a first priority lien against the retainage.[2]

---

[2] Kenco argues that Hartford was not subrogated to the claims of Kenco or Totem because it did not pay their claims when first requested, but only after they had secured judgments against Porter, Hartford, and the retainage. Kenco does not cite any authority in support of the proposition that a subrogee's rights are affected by the timing of its satisfaction of claims. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Kenco also argues that Hartford is not entitled to an equitable remedy because it has unclean hands due to its "continued wrongful conduct in this litigation." Hartford replies that Kenco fails to cite any evidence in the record supporting its allegations that Hartford acted inequitably

2. Kenco's Statutory Claim to the Retainage

Kenco contends that it maintains a first priority lien against the retainage and that its statutory claim extends to its obligation to indemnify RLI for its attorney fees. Hartford responds that Kenco's belated claim is procedurally and substantively barred under chapter 60.28 RCW and that Kenco's claim against the retainage was fully satisfied.

A person claiming a lien against the retainage must give written notice of the lien within 45 days of completion of the contract work. RCW 60.28.011(2). The claimant has four months from the time of the filing of the claim to bring an action to foreclose the lien. RCW 60.28.030. "In any action brought to enforce the lien, the claimant, if he or she prevails, is entitled to recover, in addition to all other costs, attorney fees in such sum as the court finds reasonable." RCW 60.28.030.

The parties agree that Kenco timely filed a lien against the retainage and brought an action to foreclose the lien. Kenco prevailed in the action and obtained a judgment against Porter, Hartford, and the retainage, as well as a separate

---

during the underlying litigation and argues that this failure "warrants the imposition of sanctions pursuant to RAP 10.7 or striking its brief altogether."

A party must include a reference to the record for each factual statement in a brief. RAP 10.3(a)(5), (b). If a party submits a brief that fails to comply with these requirements, the appellate court may order the brief returned for correction, order the brief stricken, or accept the brief. RAP 10.7. Striking or returning the brief may be inappropriate once the case has reached the panel. See Lawson v. Boeing Co., 58 Wn. App. 261, 271, 792 P.2d 545 (1990). "The failure to cite to the record is not a formality. It places an unacceptable burden on opposing counsel and on this court." Id.

As Hartford points out, Kenco repeatedly alleges that Hartford engaged in wrongful and inequitable conduct during the underlying litigation but does not cite anything in the record supporting this allegation. However, in this instance, striking the brief was not appropriate when the case was already under consideration and the failure to cite to the record did not place an unacceptable burden on the court. Although we do not condone Kenco's conduct, we decline to impose sanctions under RAP 10.7.

judgment against Porter and Hartford for its attorney fees and costs incurred in prosecuting the action. RLI obtained its own judgment for attorney fees and costs against Porter. Despite Kenco's pre-existing obligation to indemnify RLI for its litigation costs, Kenco did not seek to include RLI's expenditures in its judgment against the retainage for costs and fees under RCW 60.28.030.

Hartford argues that the doctrine of res judicata bars Kenco's claim. Although this doctrine is not precisely applicable in this case,[3] the principles underlying the doctrine guide our analysis. Application of res judicata is designed to promote finality and prevent repetitive litigation of the same matters. Pederson v. Potter, 103 Wn. App. 62, 71, 11 P.3d 833 (2000). Under these principles, "[a]s a general rule, when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. Thereafter, the plaintiff cannot maintain an action on the original claim or any part thereof." Caine & Weiner v. Barker, 42 Wn. App. 835, 837, 713 P.2d 1133 (1986) (citations omitted).

In Caine & Weiner v. Barker, this court considered whether a judgment creditor could recover attorney fees incurred in collecting a judgment under the attorney fee provision of the note underlying the judgment. Id. at 836. We noted that the creditor had the contractual right "to be reimbursed for its attorney's fees expended in reducing the note to judgment" and had obtained a judgment "for the entire balance due on the note plus interest, costs, and $375 in reasonable

---

[3] "Res judicata, also called claim preclusion, applies when a plaintiff's claim against a party has been dismissed by final judgment in one action and the plaintiff asserts the same claim against the same party in a subsequent action." Shandola v. Henry, 198 Wn. App. 889, 902, 396 P.3d 395 (2017).

attorney's fees." Id. at 838. "Thus, the entire obligation was reduced to a money judgment and, therefore, extinguished. . . . [T]he only attorney's fees that [the creditor] had a right to recover were included in the default judgment." Id. (second alteration in original).

Likewise, here, Kenco's statutory claim against the retainage and costs and fees incurred in enforcing its lien were decided and reduced to judgment. Kenco made no attempt to include its obligation to RLI in those judgments or modify the judgments after they were entered. At that point, the issues of Kenco's principal claim, costs, and fees were resolved. After Hartford satisfied these judgments, Kenco's claims against the retainage were extinguished, as its counsel acknowledged when declaring that "[a]ll of Kenco's judgments against [Porter] have been satisfied in full, and Kenco no longer has any claim to the PBC retainage."

Nor does the assignment of RLI's judgment provide Kenco with the status of a statutory claimant. The trial court found that RLI had no direct, statutory claim to the retainage. That finding was never challenged, nor did RLI contend at the trial court that it was a statutory claimant under RCW 60.28.011. Rather, RLI claimed that its right to the retainage stemmed from its judgment against Porter and subsequent writ of garnishment for any funds due to Porter from the retainage. When Kenco took an assignment of that judgment, it stepped into RLI's shoes as a general creditor. See Sundberg v. Boeing Airplane Co., 52 Wn.2d 734, 739, 328 P.2d 692 (1958).

Because Kenco's statutory claim against the retainage was reduced to judgment and satisfied in full, Kenco no longer holds a first priority lien on the retainage. Kenco holds the status of general creditor as assignee of RLI's judgment against Porter, and its claim against the retainage is subordinate to Hartford's.

## II. Hartford's Costs on Appeal

Hartford requests an award of its costs on appeal under RAP 14.2. "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." RAP 14.2. Because Hartford is the substantially prevailing party on review, it should receive an award of costs on appeal, as determined by this court's commissioner or clerk.

## III. Hartford's Expenses on Appeal

Hartford requests an award of its expenses on appeal under RAP 18.1. If applicable law grants a party the right to recover expenses on appeal, the party must devote a section of its opening brief to the request for expenses. RAP 18.1(a). Although Hartford sets out a section of its opening brief to request costs and expenses, it does not identify a basis for the award of expenses. Accordingly, Hartford's request for expenses is denied.

## IV. Kenco's Attorney Fees on Appeal

Kenco requests an award of reasonable attorney fees on appeal under RAP 18.9(a). Appellate courts may impose sanctions against a party who uses the rules

of appellate procedure for the purpose of delay, files a frivolous appeal, or fails to comply with the appellate rules. RAP 18.9(a). Although Kenco does not argue that the appeal is frivolous, it argues that its attorney fees should be imposed as a sanction against Hartford for using this appeal as a tactic to delay resolution of Kenco's claims. The record does not demonstrate that Hartford filed this appeal solely to delay resolution of Kenco's claims, especially because Hartford is the prevailing party. Kenco's request is denied.

Reversed and remanded for further proceedings.

WE CONCUR: